WALTER B. GUNNISON, Respondent, v. THE BOARD OF EDUCA-
    TION OF THE CITY OF NEW YORK, Appellant.

1. NEW YORK CITY — BOARD OF EDUCATION, NOT THE CITY, THE
PROPER PARTY DEFENDANT IN SUITS RELATING TO SCHOOL FUNDS.
Under the provisions of the charter of the city of New York (L. 1901,
ch. 466) the only relation that the city has to the subject of public educa-
tion is as the custodian and depositary of school funds, and its only duty
with respect to that fund is to keep it safely and disburse the same accord-
ing to the instructions of the board of education.  The city, as trustee,
has the title to the money, but it is under the care, control and adminis-
tration of the board of education, and all suits in relation to it must be
brought in the name of the board.  A suit to recover teachers' wages is
a suit affecting or in relation to the school funds and under the express
words of the statute must be brought against the board.

2. SAME.  An action brought by a school teacher in the city of New
York, to recover wages or salary, when the only object and purpose of
such action is to establish the validity of a disputed claim and liquidate
the amount, must be brought against the board of education and not
against the city.

3. BOARD OF EDUCATION AN INDEPENDENT CORPORATION, NOT A CITY
AGENCY.  The mere fact that the legislature has made the board of educa-
tion a member of one of the administrative departments of the city of
New York does not indicate an intent to devolve upon the city itself, act-
ing through one of its departments, the state functions which were
formerly directly imposed upon the board as a separate public corpora-
tion and to relegate it to an agency similar to that occupied by the police,
fire, health and other city departments, of which the city is the responsible
head; nor does the fact that the charter (§ 1055) expressly authorizes
the board to bring suits affecting school property exclude the idea that it
may also defend them and prevent it from becoming a party defendant in
such cases; nor does section 1614, requiring future suits against the city
to be in the corporate name of the city of New York, have any applica-
tion, since such suits are not against the city but are against another and
independent corporation, namely, the board of education.

The fact that the charter enumerates among the administrative depart-
ments of the city the board of education, calling it the "Department of
Education," of which the board is the head, does not make any change in
the corporate powers, duties or liabilities of the board and, therefore, does
not affect its legal capacity to sue and be sued.

Nor does the fact that the board is the head of the department exempt
it from such suits because it is not a mere agent of the city but is an

independent corporate body whose acts are not the acts of the city and for which the city is not responsible.

*Gunnison* v. *Board of Education,* 80 App. Div. 480, affirmed.

(Argued June 2, 1903; decided October 6, 1903.)

APPEAL, by permission, from an interlocutory judgment entered April 4, 1903, upon an order of the Appellate Division of the Supreme Court in the second judicial department, which reversed an order of Special Term sustaining a demurrer to the complaint and overruled such demurrer.

The following questions were certified: " I. Ought the demurrer to the complaint in this action be sustained?

" II. In an action predicated upon a claim for salary alleged to be due teachers under the charter of the Greater New York, is the board of education the proper party defendant?

"III. In an action to recover teachers' wages or salaries should not the action be brought against the city of New York?"

The nature of the action and the facts, so far as material, are stated in the opinion.

*George L. Rives, Corporation Counsel (James McKeen* of counsel), for appellant. There is no legislation anywhere providing that the board of education shall be the defendant in any case. The limit of express legislative sanction is that it may be plaintiff in the particular class of cases which have relation to school property. (L. 1901, ch. 466, §§ 1055, 1614.)

*Ira Leo Bamberger* for respondent. The board of education of the city of New York is not merely a department of the city government, but an independent corporation. An action by a teacher for salary is properly brought against the board and not against the city. (*Donovan* v. *Bd. of Education,* 85 N. Y. 117; *Gildersleeve* v. *Bd. of Education,* 17 Abb. Pr. 201; *Ham* v. *Mayor, etc.,* 70 N. Y. 459; *Ridenour* v. *Bd. of Education,* 15 Misc. Rep. 418; *Allen* v. *City of Brooklyn,* 8 Blatchf. 535.)

O'BRIEN, J.    The question in this case is presented by the demurrer to the complaint.    The action was to recover an alleged balance of wages or salary of the plaintiff and other teachers in the public schools of Brooklyn.    The defendant demurred to the complaint upon the ground that upon its face it did not state a cause of action, and that the city of New York and not the board of education was the proper party defendant.    The only question argued is whether the defendant is liable to be sued on account of the matters and things stated in the complaint.

The complaint contains several causes of action separately stated, but all of the same nature and character.    One of the causes of action is to recover a sum of money stated to be due to the plaintiff from the defendant as salary or wages, or a balance thereof, as a teacher in one of the public schools of Brooklyn.    The other causes of action are to recover a balance of salary or wages alleged to be due from the defendant to the other teachers named in the complaint, the claims for the same having been assigned to the plaintiff.    The plaintiff on all the claims demanded judgment for $1,465.20, with the interest thereon from May 1st, 1899.

The complaint avers and the demurrer admits the following facts:    (1) That the defendant is a public municipal corporation.    (2) That prior to the month of April, 1899, the plaintiff, being a duly licensed and qualified teacher, was duly appointed by the board a teacher in the public schools, and rendered services in that capacity, performing all the duties of the position.    (3) That the salary of the position had been duly fixed by the board at five hundred dollars per month for the month of April, 1899, and but $400 has been paid.    (4) That sufficient funds were appropriated to the defendant and apportioned to the Brooklyn schools to pay the plaintiff's salary.    (5) That more than ten days before the commencement of the action the plaintiff presented the claim to, the defendant and its financial officer having power to audit and pay the same, and payment or audit was refused.    (6) Precisely the same facts with respect to the employment of the

other teachers named, with the amount of salary of each per month, and the balance remaining unpaid and the assignment of each of these claims to the plaintiff. (7) That all the claims were at least thirty days before the commencement of the action presented to the comptroller of the city of New York for payment, but that he neglected and still neglects to adjust or pay the same.

On the face of the pleadings the facts are, therefore, admitted that the defendant, a public municipal corporation employed the plaintiff and the other teachers named in the complaint to teach in the public schools at the agreed salary or compensation alleged, and as to each teacher that it has refused to pay a part of the compensation, and that the sum specified in the complaint remains unpaid, although the services were fully rendered. It remains to inquire what reasons, if any, exist or can be urged why the defendant cannot be sued on account of the matters and things alleged in the complaint, and why the plaintiff must resort to the city for the recovery of his claims, since that is the contention and the only argument in support of this appeal.

It is admitted on the record that the defendant is a public municipal corporation. It is admitted that it employed the plaintiff and the other teachers at a fixed compensation and that a part of this compensation still remains unpaid. This appeal cannot be sustained unless it is shown that these facts do not constitute a cause of action against the defendant and do constitute a cause of action against the city of New York.

The city charter provides that the defendant, the board of education, shall administer all moneys available for educational purposes, and, on the facts stated in the complaint and admitted in the demurrer, it is clear that the plaintiff cannot maintain any action against the city. The mere fact that the public money for the support and conduct of the schools is deposited in the city treasury does not affect the liability of the board of education to be sued, nor does it, upon the facts stated, create any liability against the city. The city has the custody of the money, but the board must administer and

expend all school funds as the representative of the school system, and the financial officer of the city cannot pay out any part of these funds except upon the order and audit of the board. In most of the other counties of the state the county treasurer or some county or town officer has the custody of the school funds, but it cannot be paid out or disbursed except upon the order or audit of the trustees of the proper school district, and these districts are declared to be corporate bodies, thus giving them the power of independent action. (Laws of 1894, chap. 556, art. VI, secs. 42, 43, 44.) So, in the city of New York, the city, of its own motion, has no power to expend or pay out any part of the school funds for the payment of teachers. The plaintiff can make no valid claim against the city until the board of education has audited it through its own proper officer. It is important, therefore, to bear in mind that the plaintiff has no claim against the city until the salary alleged to be due to him and the other teachers has been audited or directed to be paid by the board, and it is admitted by the demurrer that the board has refused to audit the claim or in any manner direct its payment. Hence it is a disputed claim.

It was always the law and is the law still, that an action will lie against the board of education to recover a judgment upon a disputed claim which it has refused to audit or allow. (*Dannat* v. *Mayor, etc., of N. Y.,* 66 N. Y. 585–588.) A suit at law against the board is the proper proceeding to compel the adjustment or liquidation of the claim. The procedure for the collection of claims such as this was very clearly laid down by this court in the case last cited, in this language: "Under the system that is provided, there was but one way for the board of education to discharge the obligations assumed by its contracts, and that was by a draft drawn upon the city chamberlain, and so long as it was willing to give such a draft its creditors could make no further claim upon it. If it was willing to give a draft and had done all the law required of it, it could not be sued.

"It could not draw the money itself as the draft is required

to be made payable to the person entitled to receive the same, and hence a suit to compel it to pay would be an idle proceeding and in contravention of the statute. But if it refused to give a draft, then the creditor's remedy would be against it. If the claim was undisputed, he might by mandamus compel the giving of the draft. If the claim was disputed, he could sue the board of education in its corporate capacity and having thus established his claim then procure his draft. But he would have no claim against the city until he had in some way obtained such a draft as the law required. When he came with such a draft it would be the duty of the chamberlain to pay. If he refused, having the funds in the treasury, he could be compelled by mandamus to pay, or could probably in an ordinary action be made personally liable for his misfeasance." The liability of the city begins only when it refuses to honor or pay a draft drawn upon it in favor of the creditor by the board of education. There is not, and never was, any law that would permit a school teacher in any of the schools of the city to bring a suit against the city for salary when the right to the salary was disputed by the board of education, and when that body refused to audit or allow it in any form, as in this case.

It is apparent from the general drift of the argument that the learned counsel for the defendant is of the opinion that the employment of the teachers in the public schools and the general conduct and management of the schools is a city function in the same sense as it is in the case of the care of the streets or the employment of police and the payment of their salaries and compensation; but that view of the relations of the city to public education, if entertained, is an obvious mistake. The city cannot rent, build or buy a schoolhouse; it cannot employ or discharge a teacher, and has no power to contract with teachers with respect to their compensation. There is no contract or official relation, express or implied, between the teachers and the city. All this results from the settled policy of the state from an early date to divorce the business of public education from all other municipal interests

or business, and to take charge of it as a peculiar and separate function through agents of its own selection, and immediately subject and responsive to its own control. To this end it is enacted in the general laws of the state that all school trustees and boards of education shall be corporations with corporate powers, which, of course, includes the power to sue and be sued in all matters relating to the control and management of the schools. (School Law, tit. 8, sec. 7; Gen. Corp. Law, sec. 3, page 974.) These corporate powers are expressly conferred upon this defendant by the city charter. (Sec. 1062.) It needs no argument to prove that a corporation is liable to be sued upon any obligation that it has incurred or any contract made in the transaction of the business for which it was created or for any breach of duty involved in the exercise of its powers. The only purpose for which the defendant was created a corporate body was to conduct a system of public education in a designated division of the state and manage and control the schools therein. This obviously includes the employment and payment of teachers, and none of these powers or functions are conferred upon the city as such. The only relation that the city has to the subject of public education is as the custodian and depositary of school funds, and its only duty with respect to that fund is to keep it safely and disburse the same according to the instructions of the board of education. The city as trustee has the title to the money, but it is under the care, control and administration of the board of education, and all suits in relation to it must be brought in the name of the board. (Sec. 1055.) A suit to recover teachers' wages is a suit affecting or in relation to the school funds, and, hence, under the express words of the statute must be brought against the board.

The defendant is by the terms of the new charter given all the powers and subjected to all the obligations and duties of all previous boards of education or school boards. (Sec. 1058.) It is expressly required to *administer* all moneys raised for educational purposes (Sec. 1060), and, hence, the obligation to

2

pay the teachers is not only a matter implied in the duty of administration, but inheres in the contract of employment. The defendant is expressly declared to be the representative of the school system of the city in its entirety, and if the defendant is such representative the city is not. (Sec. 1064.) The board is given power to purchase, lease or condemn all real property required for school purposes, and to sell such real and personal property as may not be required for the conduct and management of the schools. (Sec. 1066.) It has power to appoint its own officers, clerks and assistants, all superintendents, architects, janitors, auditors and other employees necessary in the care of the school property, or in the conduct and management of the schools, and to fix the salary or compensation to be paid them (Secs. 1067 and 1068), and, finally, no member of the board of education can hold any office of emolument under the county, state or city government. (Sec. 1061.) It will thus be seen how completely, under the scheme of the city charter, the subject of public education is separated from all other municipal functions.

The proposition sought to be established by this appeal is that a corporate body created for the express purpose of conducting a system of public education, exercising such vast powers and charged with such important duties, is not subject to be sued by a school teacher to recover wages or salary, when the only object and purpose of such a suit is to establish the validity of a disputed claim and liquidate the amount. It is quite certain that during the last fifty years, and ever since a board of education existed in the city of New York, actions of this character have been brought and maintained against it without any question raised or doubt suggested that it was not the proper party. The board still has every power that it ever possessed, and it is still subject to every duty or obligation that ever was imposed upon it. A brief review of some of the cases in this and other courts will show that there never was and cannot now be any doubt with respect to the liability of the board of education of the city of New York to be sued upon any disputed claim or liability arising out of the

exercise of its corporate functions as the sole representative of the school system of the city. In *Donovan* v. *Board of Education of N. Y.* (85 N. Y. 117) the purpose of the act of 1851 as amended in 1853, and under which the board was organized, was considered. This court noted the fact that under the original statute the title to all school property was vested in the city, as it is now, but that by the amendment of 1853 "all suits in relation to the same should be brought in the name of said board;" a provision that, as we have seen, has been incorporated into the present charter. The purpose of the amendment is stated in these words: "It was apparently one purpose of the provision to rebut the inference of any power in the city government to control the schools, arising from the clause in the original section vesting in the city title to school property." The contention of the learned counsel for the defendant in the case at bar would be a long step in the direction of remanding the schools to the control of the city, since it must logically follow, if the city is the only proper party to be sued for teachers' wages, it must be the party, and not the board, in control of the schools. The management, government and control of the schools is clearly vested in the defendant as a corporate body, and it has been repeatedly held that it was liable to be sued upon its contracts, including the obligation to pay the wages of teachers. (*Steinson* v. *Board of Education of N. Y.*, 165 N. Y. 431; *S. C.*, 158 N. Y. 125; *Coulter* v. *Bd. of Education of N. Y.*, 63 N. Y. 365; *O'Leary* v. *Bd. of Education of N. Y.*, 93 N. Y. 1; *Gildersleeve* v. *Bd. of Education of N. Y.*, 17 Abb. Pr. 201.) The case first above cited is a very recent one, and the action for teachers' wages was not only sustained, but it was distinctly held that the legal relation between the board and the teacher is one of contract. It is scarcely necessary to add that if the contract of a teacher is with the board it is not with the city, and it would seem to be plain that the proper party to be sued is the one that made the contract, and not a party that did not make it and had no power to make it. This court has still

more recently entertained and decided controversies between the teachers in the public schools of the city and the board of education concerning the right or power of the board to remove teachers or reduce their grade or compensation. (*Matter of Cusack* v. *Board of Education*, 174 N. Y. 136; *People ex rel. Callahan* v. *Board of Education*, 174 N. Y. 169.) If it be true, as now contended, that the board is nothing but a mere organ or agency of the city, and that the latter represents the schools, it is plain that the proceedings in these cases were brought against the wrong party, and should have been brought against the city instead of the board. It is quite remarkable, however, that neither of the counsel in the case nor any member of the several courts through which the cases passed, ever thought of the point now raised. The reason for this is very obvious, since the board, being charged by the charter with the control and management of the schools and the administration of the school funds, and representing the entire school system, it was the proper party and the proceedings would not lie against the city, as it had no power to restore the teachers to their former positions or to fix their compensation.

Actions and special proceedings of almost every conceivable character have been so often brought and maintained against the defendant, the board of education, that the present contention would seem to be without any support in reason or authority. Suits have been repeatedly maintained against the defendant on contracts for building or repairing schoolhouses (*McGregor* v. *Board of Education of N. Y.*, 107 N. Y. 511; *Van Dolsen* v. *Bd. of Education of N. Y.*, 162 N. Y. 446; *Dwyer* v. *Bd. of Education of N. Y.*, 165 N. Y. 613); and so mandamus proceedings have been instituted against the board to compel the delivery of papers (*People ex rel. Hoffman* v. *Board of Education of N. Y.*, 141 N. Y. 86); to compel payment of teachers' salaries (*People ex rel. Steinson* v. *Bd. of Education of N. Y.*, 158 N. Y. 125); or to compel an increase of salary or reinstatement of teachers (*People ex rel. Murphy* v. *Board of Education of N. Y.*, 173 N. Y. 607; *People ex rel. Christie* v. *Bd. of Education of N. Y.*,

167 N. Y. 626); and certiorari proceedings have been brought to review certain acts of the board (*People ex rel. Hoffman v. Board of Education of N. Y.*, 143 N. Y. 62; *People ex rel. Fisk v. Board of Education of N. Y.*, 142 N. Y. 627). It is quite true that some of the special proceedings referred to above were not successful, but were denied or dismissed; that, however, was not for the reason that the defendant was not the proper party. The decisions in those cases were based upon the merits of the controversy or on some question of practice, but no one suggested that the suit or proceeding should have been brought against the city instead of the board of education, and that is the sole question with which we are now concerned.

It is very plain, therefore, that the contention on the part of the defendant, that it is not the proper party to be sued, cannot be sustained unless it is shown that some change has been made in the statute law on the subject by recent legislation. The contention of the learned counsel for the defendant is that a radical change has been effected in this respect, and that the law of fifty years has been superseded by the enactment of the present charter, and it is upon this contention that this appeal must stand or fall. The following statement, taken from the printed argument in support of the appeal, clearly discloses the counsel's position with respect to the right to bring suits of this character against the board of education under the present charter: "What we urge in this connection is that the legislature in making the board of education a member of one of the administrative departments of the city of New York have devolved upon the city itself, acting through one of its departments, the state functions which were formerly directly imposed upon the board of education as a separate public corporation. In this respect the board of education is similar to the department of health, the police department, the department of public charities and the fire department. No more reason exists for holding that a common-law action should be brought against the board of education than for holding that such actions should be

brought against the members of the other departments above named."

Surely, if this is a correct statement of the law a great change has been made, which we would naturally expect to find clearly expressed in the new charter, since it is in that charter that we still find all the statutory provisions quoted above, and notably that provision wherein it is declared that the board of education shall, in its corporate capacity, represent the entire school system. If the state has departed from the settled policy that has prevailed since its organization, of keeping the work of public education and the control and management of its schools separate and distinct from all other municipal interests and business by the selection of its own agents, and clothing them with corporate powers to represent the schools, such as school districts and boards of education, and has devolved these powers and duties directly upon the city, we would naturally expect to find such a departure and notable change expressed in language so clear that no doubt could arise as to this change of policy. If the board cannot be sued for teachers' wages and the teacher must resort to a suit against the city, then surely the board must have sunk into a mere city agency, and it no longer has any use for independent corporate powers. Public education then becomes a city function, exposed to the taint of current municipal politics, and to any and every general mismanagement that may prevail in city departments.

But we still have the very plain provisions of the charter declaring that the board is the representative of the entire school system, and has the power to administer all school funds, and is vested with the right to manage and control all school property, followed by the provision that "suits in relation to such property shall be brought in the name of the board of education." But the learned counsel for the defendant explains away all these provisions in his printed brief in the following words: "There is no express legislation as to the relation of the board of education to law suits except that, under the provisions of this section, suits affecting school

property shall be *brought* in its name.   There is no language anywhere providing that the board of education shall be a defendant in any case.   The limit of express legislative sanction is that it can be plaintiff in a particular class of cases, which have relation to school property.   This special provision on the subject excludes other cases, and in connection with the general provision in section 1614 of the charter above quoted, impels the conviction that the legislature intended that suits other than such as are here expressly mentioned should be brought against the city of New York."

The meaning of this proposition is that under the present charter the board of education may bring suits as plaintiff, but cannot be sued as a defendant, and when applied to this case it means that the board may sue teachers and others for breach of their contracts, but the teachers and others cannot sue the board for salary, wages or compensation.   No argument is necessary to refute this proposition.   The bare statement that a corporate body exercising full control and management of the schools and representing the school system in its entirety may *bring* suits in all matters relating to the schools, but cannot be sued upon claims or demands arising out of the management and conduct of the corporate business, is such an extreme and unreasonable view of the legal relations between the board and the teachers, that the proposition refutes itself.

We have seen that the policy of this state for more than half a century has been to separate public education from all other municipal functions and intrust it to independent corporate agencies of its own creation, such as school districts and boards of education, with capacity to sue and be sued in all matters involved in the exercise of their corporate powers.   We have seen that during this long period of time this court and all the courts of this state have accepted this rule and acted upon it, and not until now, and in this case, has any question been raised with respect to the right of a teacher to bring suit against the board of education to recover salary or wages. In no part of the state have suits of this character so frequently arisen as in the city of New York, under the charter of

that city, and in no instance has any doubt been suggested that the board was not the proper party defendant or that the city was. The learned counsel for the defendant must, therefore, be able to point to some new and plain provision of the present charter that abolishes the long-settled policy of the state and reduces the board of education to a mere city agency, incapable of being impleaded in the courts as a defendant upon one of the contracts that it made for the employment of teachers in the schools. He has been able to point out but two sections that even in his own view give the slightest support or color of support to his contention, and it will be seen that neither one of these sections when fairly examined has any effect whatever upon the powers, duties and obligations of the defendant as they have always existed in successive charters and have been applied by the courts to actions of this character.

The first provision relied upon as a foundation for the radical change suggested is to be found in section 1644 and reads as follows: " All future suits by or against the city of New York as hereby constituted, or against any of the municipal and public corporations in this act united and consolidated, shall be in the corporate name of the city of New York." This section has not the slightest reference to the board of education, but simply points out how suits against the city of New York must be brought. It has no application whatever to this case, since this is not a suit against the city nor against any of the political divisions united and consolidated with it, but against another and independent corporation, namely, the board of education. The meaning and purpose of this provision is very obvious. Prior to the enactment of the present charter the corporate name and style of the city was " The Mayor, Aldermen and Commonalty of the City of New York," and all suits had to be brought against it in that name. (Cons. Act, sec. 26.) In the enactment of the new charter this provision of course had to be changed, and by the first section, the old city, with certain other cities, towns, counties and other political divisions united and consolidated with it are to

form a new municipal corporation to be known as " The City of New York." Having changed the name of the city and having abolished and taken into it various other municipal corporations theretofore existing, capable of bringing suits and being sued in the name by which they had been known before, the legislature thought it wise and necessary to prescribe how and in what name or form the new city was to sue or be sued. There is nothing new in this provision; it was always the law under every charter that suits by or against the city must be brought in the corporate name, and that is all that this provision was intended to accomplish or does accomplish. It does not contain even the most remote suggestion that suits by or against the board of education, that had always been brought and maintained by or against that corporate body, were thereafter to be brought by or against the city, and does not touch such actions at all, but leaves them just where they were before. It is an erroneous idea to suppose that this provision of the charter operated to make any change with respect to suits against the board of education which had always been maintained since the board was organized and given the management and control of the school system.

The other provision of the present charter, which it is said is new and makes a radical change with respect to the proper party defendant in such actions as this, is to be found in section 96, where the administrative departments of the city, fifteen in number, are enumerated. The board of education is there called the " Department of Education," and the head of the department is to be called the board of education, and shall consist of forty-six members. (Sec. 108.) It is difficult to see how the mere listing of the board of education among the city departments makes any change in its corporate powers, duties or liabilities. It possesses every power now that it ever had, and much more. The legal capacity to sue or be sued that was always inherent in it as a corporate body, and in terms conferred by express statute has not been affected or taken away by calling it " The Department of Edu-

cation." It is still the sole representative of the school system, with exclusive powers to control, manage and administer all school property and school funds. If enumerating the board as a corporate body among the departments did not make it any greater than before, it certainly could not make it any less. It was not shorn of the capacity to be sued which it always possessed, or of any of its powers or functions, by being promoted to the dignity of a department. Moreover, the provision was not new. The board of education was made a city department by the charter of 1873, and under the charter of Brooklyn, where this case originated, the board of education was always classified as one of the departments of the city, but no one ever before supposed that by conferring that title upon it the legislature thereby deprived it of the capacity to be sued, which is a common characteristic of all corporate bodies.

But it is said, and this is the reasoning process in support of the argument, that since an individual head of a department cannot be sued for his official acts, it must follow that the head of a department being a corporate body is likewise exempt from such suits. That argument rests entirely upon a *non sequitur*. The head of a city department who is a natural person, is a mere agent of the city; *his acts* are the acts of the city and the city alone is responsible for them, but the board of education is an independent corporate body created for the particular purpose of exercising specific statutory powers as the sole representative of the school system, and its acts are in no sense the acts of the city, and the city is not responsible for them, as this court has often held. The board is the lineal successor of the old school districts, with powers much enlarged, and it might just as well be argued that these districts in the rural part of the state could not be sued, but that the action must be brought against the village, the town or the county. If a great corporate body, exercising such vast powers as are conferred upon this defendant, cannot be sued for the wages of teachers that it employs, it would be difficult to justify such actions against the school districts in other parts of the state. But the argument that the defend-

ant's capacity to be sued is lost in consequence of placing it upon the list of city departments, if it proves anything at all, proves too much. If it proves that the defendant cannot be sued in matters relating to the schools, it must prove that it cannot sue. If it proves that the board cannot be made a defendant, it must prove that it cannot be a plaintiff, since the individual head of a city department has no more capacity to be sued than to sue. The reasoning and argument by means of which it is sought to establish the proposition that a corporate body charged with the duties and intrusted with powers to conduct a system of public education in the chief city of the state is capable of bringing suits in all matters relating to the corporate functions, but incapable of being made a defendant in suits by others in matters growing out of the exercise of these functions, is certainly not very powerful or persuasive. From whatever point this contention is viewed, it will be found to be without any legal basis. The facts stated in the complaint and admitted by the demurrer constitute a good cause of action against the defendant, but no cause of action whatever against the city. The demurrer was not well taken, and hence the judgment of the learned court below overruling it is right, and should be affirmed, with costs. These views sufficiently cover the questions certified.

PARKER, Ch. J., GRAY, BARTLETT, HAIGHT, CULLEN and WERNER, JJ., concur.

Judgment affirmed.