(43 Misc. Rep. 197.)

TRUSTEES OF WASHINGTON ACADEMY IN SALEM v. CRUIKSHANK,
President Board of Trustees of Village of Salem, et al.

(Supreme Court, Special Term, St. Lawrence County. March, 1904.)

**1. Schools—Contract with Board of Education—Restraining Breach.**
  The trustees of a private academy made an agreement with a village
  board of education which occupied with its schools parts of the academy
  not used by the trustees, whereby the trustees were to hire the principal
  of the academy at a stated salary. Nonresident pupils were not to be
  admitted free, and the board of education was to pay all sums necessary
  to maintain the academy, and keep the receipts. *Held*, that the board
  would be restrained from increasing the principal's salary and from ad-
  mitting nonresident pupils free, in violation of the contract.

**2. Same—Contract Ultra Vires.**
  The Village Charter (Laws 1851, p. 414, c. 206) §§ 98, 108, authorized
  the board of education to pay the trustees of the academy tuition for non-
  resident pupils, but there was no proof as to how many nonresident pupils
  were taught in the academy, nor how much, if any, the expenses of main-
  tenance exceeded the receipts; nor was it shown that during years of
  performance of the contract the board had been required to pay an
  excessive or unreasonable sum. *Held*, that the contract would not be
  declared ultra vires because the board was to pay the cost of mainte-
  nance and have the receipts.

**3. Same—Estoppel to Deny Power to Contract.**
  The board of education could not, while occupying a part of the
  building with its schools and enjoying all the benefits of control, ask
  a court of equity to declare the contract ultra vires.

Action by the Trustees of Washington Academy in Salem against
William J. Cruikshank, president of board of trustees of village of Sa-
lem, and others. Judgment for plaintiff.

James Gibson (S. W. Russell, of counsel), for plaintiff.
Scherer & Downs, for defendants.

JOHN M. KELLOGG, J. The Washington Academy, founded
1780, incorporated 1791, has managed its property, maintained its
organization, and conducted its school ever since. In 1851 the board
of education of the village of Salem, under the authority of chapter
206, p. 381, Laws 1851, leased a part of the plaintiff's building and con-
ducted the village schools therein until 1886, when the lease and con-
tract in question was executed, by which the board of education leased
a part of the academy building for the use of the schools of the village,
and the plaintiff was to maintain its academy in the remainder of said
building. This action is brought nominally to enforce specific per-
formance of said contract, but in fact to prevent the defendant from
hiring the principal for said academy and paying him a larger salary
than that provided in the contract between the plaintiff and the defend-
ant and between the plaintiff and said principal, and to prevent the de-
fendant and said principal from introducing into said academy nonresi-
dent pupils free. Both acts complained of are in clear violation of the
terms of said lease and contract. The defendant, however, seeks
to justify itself by the claim that the contract was ultra vires and in-
valid. The alleged defense of the defendant is no justification. The
contract and lease are the only pretended authority for the defendant

to occupy any part of the building or to have any relation whatever to the academy. Aside from it, the plaintiff is entitled to the possession of its property and the absolute control of its business so far as the defendant is concerned.

While it is true that the principal's salary eventually comes from the defendant unless the receipts of the academy are sufficient to otherwise pay it, and the fees from the nonresident pupils would belong to the defendant, if paid, and it might at first seem that the plaintiff was not injured by the acts of the defendant, although wrongful, nevertheless the assumption by the board of education of the right, under its lease or otherwise, to hire a principal for the plaintiff and to determine upon what terms nonresident pupils may be received into the academy, is an unlawful interference with the plaintiff's business and property rights. The defendant has hired the principal for the school years 1903 and 1904, and thereupon the plaintiff served upon him the 90-days notice required by his contract, terminating his employment as principal of the academy on the 25th day of November, 1903. Considering the public interest involved and the importance of a determination as to who may be the principal of the academy, and the fact that a tenant introduced into the property with special rights now assumes to exercise such unwarranted rights in the property as tend to give it the absolute control and dominion over it, makes this a proper case for a court of equity to interfere by injunction and to restrain the action of the defendant from interfering with the school which the plaintiff has conducted so long, has insisted upon maintaining in its integrity, and has the right to maintain. The acts of the defendant complained of are not only a violation of the contract itself, but, irrespective of the contract, are acts which the defendant has no right to do, and against which the plaintiff is entitled to the protection of the court.

But counsel urge upon the court a consideration of the validity of the contract. It is clear that a board of education has no right to delegate its authority and contract out its judgment and discretion to another person or corporation, and that it has no right to expend the public money raised for school purposes except for such purposes and for the purposes which are authorized by law. If the board of education has by this contract turned over to the Washington Academy any discretion as to the conduct of the common schools of the village of Salem, such act is unauthorized. But this contract does not have that effect. The academy is not a part of the public schools, under the control of the board of education, and could not become so even by act of the Legislature, without the consent of the corporation owning that institution.

The following provision of the contract requires consideration:

"The principal of the academy shall have the general superintendence of all the schools taught in said academy edifice; those of the said academical department under the direction of said trustees and those of the said board of education under its direction, his salary as principal being deemed his only compensation therefor."

The parties to the contract have put upon this clause, as it seems, a practical construction, by which the plaintiff, in employing the principal, causes him to agree that he will act as superintendent of the pub-

lic schools if the board of education elect him to that position, without other compensation, and the board of education thereafter appointed him such superintendent of public schools. It is fair to assume that the same method has previously been pursued. So far, then, as the present principal, and probably his predecessors, have acted as superintendents of the public school, it has been pursuant to an election by the board of education, he to act under its directions; and the principal acting at the time of the commencement of this action, as we have before seen, seems not only to have been elected by the board of education superintendent of the public schools, but also to have been deemed by it a competent and proper person to be elected principal of the academy.

The village charter (Laws 1851, p. 414, c. 206, subd. 14, § 98) provides:

"And said board may organize and maintain primary, secondary or high schools, or either of them in, or cause the same to be taught in connection with the Washington Academy on such terms and conditions, and for such time, not exceeding ten years, as shall be deemed expedient by and between said board of education and the trustees of said academy."

And by section 108 it has power "to lease from the said trustees the academy building and grounds adjacent, or contract for the joint or several occupation of the same, or so much thereof, or such privileges therein, or appertaining thereto, on such conditions, and for such time not exceeding two [by amendment changed to ten] years, as they shall deem advisable." Under the provisions and the general scheme of the statute, had the trustees and the board deemed it wise, they practically could have made the academy an academical department of the union school. But they did not do so. They seem simply to have had in mind the causing to be taught, in connection with the Washington Academy, a high school, or high school studies, thus covering about the same ground as is now authorized under the consolidated school law, where any union free school may adopt an academy as the academic department thereof, and contract for instruction therein of pupils of the academic grade residing in the district. Consolidated School Law (Laws 1894, p. 1263, c. 556, tit. 8, art. 4), as amended, Laws 1902, p. 887, c. 325, § 27a. Section 27 of the law authorizes the trustees of an academy to resign, and turn the academy over as an academical department of the school. This last statute (section 27a) provides for a case where the academy is to remain in the control of its trustees and officers, but the union free school contracts for the right to have its pupils taught there. Such right to contract necessarily implies the power to pay therefor. This village charter seems to have contemplated, if the trustees insisted upon retaining control of its school, that an arrangement might be made whereby the village should have certain advantages in the school, it remaining, however, under the management of the trustees. Section 113 of the act (Laws 1851, p. 419, c. 206) seems to confirm this view where it provides that the trustees shall receive from the regents the allowance for classical scholars admitted through the board of education.

The management of schools and educational institutions is in the state, and not in the particular localities where the school is situated. "There is no contract or official relation, express or implied, between the teachers and the city. All this results from the settled policy of the

state from an early date to divorce the business of public education from all other municipal interests or business, and to take charge of it as a peculiar and separate function through agents of its own selection, and immediately subject and responsive to its own control." Gunnison v. Board of Education, 176 N. Y. 11, 16, 68 N. E. 106. And the board of education, so far as the power of administration and of contracting with the academy is given by the village charter, has all the powers which the state itself might have or could exercise within the limits of the authority given. People ex rel. Wakeley v. McIntyre, 154 N. Y. 628, 49 N. E. 70. It had, therefore, every authority to make the same arrangement with the academy as the consolidated school law grants to the union free schools.

It is urged that the original free school law (Laws 1853, p. 835, c. 433, §§ 17, 18), which authorizes a board of education of a union free school to adopt an academy upon the resignation of the trustees, and then declares that that provision is applicable to free schools in villages which have been established by special charter, does away with these provisions in the village charter. The union free school law of 1853 only provided for the merger of an academy with the consent of the trustees. It does not purport to cover a case where the trustees do not consent to resign, or where rights or privileges less than a merger are to be obtained. Therefore that law is not necessarily inconsistent with the provisions of the village charter, and it is familiar learning that particular provisions in a private charter or special statute are not repealed by inconsistent provisions in a general law unless such law shows a clear intent to effect such result. This statute does not repeal or affect the right of the board of education to make the arrangements contemplated by the village charter. This view is confirmed by the provision in the consolidated school law which takes the place of the law of 1853, and which provides that it shall not affect, impair, or change any special law touching the schools or school systems of any incorporated village, unless so stated in the act. Laws 1904, c. 556, art. 16, tit. 15, § 49. The board of education therefore had the right to contract with the plaintiff for the admission free, and education in the academy, in such manner as might be agreed upon, of the pupils of the village suitable to be taught there. The lease of parts of the building and the arranging for the education of the pupils of academic grade in the village are authorized by the village charter.

The only question is, has the board of education, in paying for the rights which it has thus secured by the lease and contract, exceeded its powers, and imposed upon the taxpayers of the village the support of an academy which is owned and controlled by a private corporation whose officers are not officers of the village or of the board of education? Undoubtedly, under the law, the board has the right to pay to the academy such sum as is a reasonable compensation for the rent and services referred to. It is agreed that the principal selected by the plaintiff shall receive a salary of not to exceed $1,000, and the assistants and their salaries are in the discretion of the board of education. The board is to pay the expense of lighting and heating the building, and pay for the care of the rooms, and "to provide such additional sums as shall be necessary in the judgment of said board to maintain the efficiency

of said academy." So that the expenses of the board in relation to the academy are pretty well ascertained. It does not, however, appear what sums are received from the regents, or what other income there is to diminish the amount to be paid by the board. Nor does it appear how many pupils from the village are taught in the academy. So that the court has no means of saying whether this contract is or is not beneficial to the village. The village may pay in expenses more than it receives from the academy, or it may receive much more than it pays out. It would, however, seem that a contract which was made in 1888, renewed twice—the last time in 1899, and for 10 years—embracing a lease of the building which had been furnished to the school public of the village since 1851, and other advantages which had been furnished since 1888, and which have proved mutually satisfactory until the present, does not impose any serious burden upon the taxpayers or the board of education, and that a court of equity would at least refrain from saying that such agreement is illegal until it is shown by facts and figures that an unjust and unfair rental is being paid. It seems evident that the management by the plaintiff of the affairs of the academy is not unduly oppressive upon the defendant from the fact that it is paying the same teacher $150 more than he was to render the same services to the plaintiff for, and that it has admitted 21 nonresident pupils free, while the plaintiff desires them to pay. Clearly, then, the plaintiff is not imposing burdens upon the defendant which were unexpected, unjust, or unfair from a financial or taxpayers' standpoint. It is time to call upon a court of equity to interfere in a case like this where it is shown that the contract is harsh and oppressive. It was held in a case where a town delivered over to a railroad company stock it owned in another company to induce the former company to accept the road and extend it, which would be very beneficial to the town, that, after the road was extended and the stock had been delivered many years, a court of equity would not spend much time in determining whether the arrangement was originally legal or illegal. Town of Mt. Morris v. Thomas, 158 N. Y. 450, 53 N. E. 214.

The plea of ultra vires is of little avail to a party in a court of equity who is in receipt of and enjoying the benefits intended to be conferred upon him by the contract. A corporation lessee cannot remain in possession of leased premises and pay its rent by such plea. Such defense is not available where the contract has been in good faith fully performed by the plaintiff, and the defendant has had the benefit of such performance and of the contract. Bath Gas Light Co. v. Claffy, 151 N. Y. 24, 45 N. E. 390, 36 L. R. A. 664; Vought v. Eastern B. & L. Ass'n, 172 N. Y. 508, 65 N. E. 496, 92 Am. St. Rep. 761; National Wall Paper Co. v. Hobbs, 90 Hun, 288, 35 N. Y. Supp. 932.

It seems sufficient, therefore, for the present, to determine that the defendant had not the right to employ a principal for the academy, and that it be restrained from so doing; that it has not the right to determine that nonresident pupils shall be admitted to the said academy free, or upon what terms they shall be admitted. Findings and judgment accordingly may be submitted, and, if not agreed upon, will be settled upon five days' notice. Costs are awarded to the plaintiff.

Judgment accordingly.