MILLER v. TAYNTOR et al.   (No. 298/35.)

(Supreme Court, Appellate Division, Third Department.   November 10, 1915.)

1. MUNICIPAL CORPORATIONS ⬅211—BOARD OF EDUCATION—INVESTIGATION BY COUNCIL—AUTHORITY UNDER CHARTER.

Under Binghamton City Charter (Laws 1907, c. 751) § 41, providing that the council may, not inconsistent with the provisions of that act or any other laws, regulate the powers and duties of any city officer or department, and has power to investigate all city officers and departments, power of the council to investigate the board of education is limited to the council's authority to regulate the board's powers and duties.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 567–570; Dec. Dig. ⬅211.]

2. MUNICIPAL CORPORATIONS ⬅211—BOARD OF EDUCATION—REMOVAL BY COUNCIL—AUTHORITY UNDER CHARTER.

Existence of right either in the council or mayor to remove a member of the board of education under Binghamton City Charter (Laws 1907, c. 751) § 18, empowering them to remove city officers, is negatived by the specific limitations surrounding the right of removal of a member of such board, contained in section 385, empowering the mayor to make such removal, but only when the member shall be served with a copy of the charges against him, and giving him right to defend.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 567–570; Dec. Dig. ⬅211.]

3. MUNICIPAL CORPORATIONS ⬅211—BOARD OF EDUCATION—INVESTIGATION BY COUNCIL—REMOVAL BY MAYOR.

Power of the mayor under Binghamton City Charter (Laws 1907, c. 751) § 385, to remove a member of the board of education, does not authorize

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an investigation of the board by the council for the purpose of ascertaining what action should be taken by the mayor; the investigation not being at the mayor's request, nor necessary for the purpose.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 567–570; Dec. Dig. ☞211.]

4. MUNICIPAL CORPORATIONS ☞211—BOARD OF EDUCATION—INVESTIGATION BY COUNCIL—PREAMBLE OF ORDINANCE.

The preamble of an ordinance, providing for an investigation of the board of education by a committee of the council, indicating a reason and purpose therefor which under the charter does not authorize it, it must be assumed it is unauthorized.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 567–570; Dec. Dig. ☞211.]

Howard, J., dissenting.

Appeal from Special Term, Broome County.

Action by Charles S. Miller, as taxpayer of the city of Binghamton, against H. Walter Tayntor and others, to enjoin an investigation of the board of education. From the part of an order which overrules the demurrer to the complaint as to the allegation in the demurrer that the complaint does not state facts sufficient to constitute a cause of action, defendants appeal. Affirmed, with leave.

Argued before SMITH, P. J., and KELLOGG, HOWARD, and WOODWARD, JJ.

John Marcy, Jr., of Binghamton (Burr W. Mosher and Harry A. Yetter, both of Binghamton, of counsel), for appellants.

Curtiss, Keenan & Tuthill, of Binghamton (George B. Curtiss, of Binghamton, of counsel), for respondent.

SMITH, P. J. [1, 2] By section 41 of the charter it is provided that:

"The common council may, by ordinances passed by two-thirds of all its members, *not inconsistent with the provisions of this act, or any other laws of the state,* regulate the powers and duties of any city officer or department; and it has power to investigate all city officers and departments. * * * *"

It is a strong presumption that the power given to a municipality to investigate is ancillary only to the power to regulate. It is not probable that the common council has been given power to uncover a sore which it cannot heal. This presumption is fortified by the fact that the power to investigate given to the common council of the city of Binghamton is in the same section and follows the power given therein to regulate the powers and duties of any city officer or department. To the extent, then, that the common council is authorized to regulate the powers and duties of the board of education, it is clearly authorized to investigate, and it would naturally follow that the limit of the power to regulate would be the limit of the power to investigate. Title 16 of the city charter assumes to define the powers and duties of the department of education. By section 394 very broad powers are given. This board is given the entire supervision and management of the public schools in said city, and all the powers and duties of commissioners of common schools and of trustees of the

several school districts in the state under the general statutes relating to common schools, where such statutes are not inconsistent with the provisions of the act. The powers as given by that section would seem intended to assimilate the city educational department with the state department. So that the principles governing the administration of school matters under the state law should be here applied, unless explicitly modified by the charter provisions. That the state commissioner of education has power to make this very investigation is not questioned in appellant's brief; in fact it is admitted, and it is only claimed that the common council has the like power. There is no apparent reason why the power of investigation should be given to the city in addition to the existing power of the state educational department, where the right to regulate the powers and duties of the members of the board are limited, as they are by these charter provisions. It is true that the mayor has the power to appoint or to remove the members of the board. By section 385 of the charter that power is given, but only when a member should be served with a copy of the charges preferred against them and giving them the right to defend. It is claimed in appellant's brief that the power of removal also exists under section 18 of the city charter, but the specific limitations surrounding the right of removal of a member of a board of education, contained in section 385 of the charter, negatives the existence of the right either in the council or the mayor to remove a member of the board under section 18. In fact, the existence of these two sections in the charter would seem to indicate that for certain purposes a member of the board of education was not by the Legislature regarded as a city officer, or the department as a city department.

[3] This power of removal is claimed by the appellant to be sufficient to authorize this investigation for the purpose of ascertaining what action should properly be taken by the mayor. In the first place it may be answered that it nowhere appears that it was at the mayor's request that the investigation was ordered, nor does it appear that it is at all necessary for that purpose. The state department of education has full authority to investigate, in order to ascertain the full facts of the case, and the fruits of that investigation were accessible to the mayor of the city of Binghamton for the purposes of determining whether sufficient cause existed for the removal of any member of the board. The power of removal, therefore, by the mayor, would seem to furnish no reason for the existence of this power of investigation in the common council. Moreover, there are economic reasons which imperatively demand a complete separation between the educational and political departments of a city, as far as the regulation of the public schools may be concerned. If the members of a board of education were subject at all times to examination and investigation by a political municipal body, it would seriously impair the usefulness of the board and materially interfere with its highest efficiency.

[4] Admitting the power, then, of the council to investigate, to the extent that they had the power to regulate, should this investigation be allowed to proceed, and the moneys of the taxpayers expended therefor, for that limited purpose? As a preamble to the ordinance authorizing the investigation it was recited:

"Whereas, it appears that differences of opinion and of action have arisen and now exist among the members of the board of education of the city of Binghamton, and that by reason of such differences the members of the board of education are not performing their official duties in a harmonious and businesslike manner, and that the existing differences and dissensions among the different members of the board of education are detrimental to the best interests of the department of education and of the schools of the state; and, whereas, it is the opinion of the common council that a fair and impartial public investigation of the department of education should be had: Therefore ordained. * * *"

This preamble to this resolution must have been put there for a purpose, and must be deemed to specify the purposes for which the investigation is to be made. It is the statement of the members of the common council as to the reason and purpose of the investigation ordered. There is nothing specified in this preamble upon which the common council has authority to act in regulation thereof, and we must assume, therefore, if the power of investigation be co-ordinate only with the power of regulation, that the investigation itself is unauthorized by the charter.

The interlocutory judgment should therefore be affirmed, with costs, with usual leave to withdraw demurrer and answer, upon payment of costs in this court and at Special Term.

KELLOGG and WOODWARD, JJ., concur.

HOWARD, J. (dissenting). On the 30th day of June, 1915, the common council of the city of Binghamton passed an ordinance appointing a committee of its members to investigate the board of education of the city. The plaintiff has brought a taxpayer's action to restrain this investigation. The defendants have demurred to the complaint upon several grounds, but none are here for consideration, except the contention that the complaint does not state a cause of action; and this involves the question as to whether the common council is authorized to investigate the board of education.

The charter of the city of Binghamton is a modern document. It is chapter 751 of the Laws of 1907. It must have been phrased by the Legislature with a full consciousness of the general policy of the state towards education, and of the ruling cases decided by the courts relative to that policy. Being thus conscious, it undertook, in section 6 of the charter which it prepared for the city of Binghamton, to enumerate the city officers. It used this language:

"The officers of the city shall be a mayor, * * * five commissioners of education."

And the Legislature divided the charter into chapters, and each chapter is called a "title." Each of these titles deals with a separate subject or department of the city government, and "Title XVI" is styled the "Department of Education." The Legislature, after expressly denominating the commissioners of education "officers of the city," and, in speaking of them as a body, after having expressly styled that body the "department of education," provides in section 41 that the common council "has power to investigate all city officers and departments."

Unless this plain language is modified by some other statute, or by some construction of the courts, it cannot be misunderstood. This power to investigate includes a commissioner of education as clearly as it does the treasurer, and it includes the department of education as clearly as it does the department of police.

But, although the charter expressly declares that the commissioners of education are city officers, we are asked to hold that they are not city officers; and Gunnison v. Board of Education of N. Y., 176 N. Y. 11, 68 N. E. 106, is presented to us as the authority which authorizes us to proclaim the law not to be that which the Legislature has declared it to be. So much reliance is placed upon this case that it is well to give the views of the Court of Appeals itself concerning it. Judge Hiscock in Hogan v. Board of Education, 200 N. Y. 370, 93 N. E. 951, has analyzed Judge O'Brien's opinion and stated its effect. He writes:

"The appellant attempts to build up an argument in favor of his views on the case of Gunnison v. Board of Education of N. Y., 176 N. Y. 11 [68 N. E. 106]; but this case will not bear any such burden as he desires to place upon it. Doubtless there are isolated quotations from the charter as it was then assumed to be, and expressions of opinion by the learned judge writing the opinion, which, construed by themselves, might inferentially support the position of the present appellant; but, as is well understood, this is not the proper method by which to determine the scope of a decision. The opinion must be interpreted as a whole, and whatever was said must be tested by reference to the actual question then before the court. When we do this, we see that the question presented to the court in that case was whether a suit by a teacher for his salary should be brought against the board of education as a defendant or against the city under the provisions of the charter. By means of a general discussion of the provisions of the charter constituting the board of education and prescribing its powers and duties, the conclusion was reached that such a suit should be brought against it, and not against the city."

Thus it will be seen that the Gunnison Case by no means authorizes us to revoke, reverse, or ignore the plain language of the Legislature. This being so, and the Legislature having declared the commissioners of education to be "city officers," they must remain city officers, and, the board of education having been declared to be the "department of education," it must so remain. To attempt by construction to twist these deliberate words of the Legislature into an opposite meaning is to mock at the English language. Therefore it follows that the common council may investigate the board of education.

It may be noted in passing that in the Hogan Case, supra, certain employés of the board of education were held to be employés of the city of New York. The Appellate Division in the Hogan Case, when it was before that court, also held that:

"It is true, of course, that the board of education is a corporation distinct from the municipality. It discharges a governmental function, but is not necessarily divorced from the city government. The Legislature might devolve its duties upon some other local agency. The question is one of construction, not one of power in the Legislature." Hogan v. Board of Education, 137 App. Div. 255, 121 N. Y. Supp. 924.

I do not think it necessary to write a dissertation on the general educational policy of the state, or go further than to decide the question

before us. It may have been unwise, in drafting a charter for the city of Binghamton, to deviate from the "settled policy" of the state, if there be any settled policy, or the "settled policy" of the state education department. But that proposition is for the Legislature, not for the courts. No policy of a state department can become so settled that the Legislature cannot upset it. The education department itself is a creature of the Legislature, and must bow to the will of that august body.

The order should be reversed, and the demurrer allowed.