EINAR B. ERIKSEN, Plaintiff, *v.* CITY OF NEW YORK and Others, Defendants.

Supreme Court, Special Term, New York County, December 9, 1937.

*A. Spencer Feld,* for the plaintiff.

*Paul Windels, Corporation Counsel,* for the defendants.

VALENTE, J. A member of the teaching staff of the city of New York has brought this action against the city of New York, its mayor, its comptroller, and the board of education, for a declaratory judgment decreeing that Local Law No. 40 of 1937, known as the residence law, has no application whatsoever to plaintiff or any member of the teaching and supervising staff of the board of education of the city of New York.

Upon the summons and complaint and plaintiff's affidavit an injunction is sought pending the final determination of the action to restrain the enforcement of this local law to the teaching staff. The provisions of local law which were adopted on or about July 13, 1937, are as follows:

" Section 1. No person not a citizen and a *bona fide* resident and dweller in good faith in the city of New York for at least three years shall hereafter be eligible to appointment or employment, or to hold any office in any of the departments, boards, bureaus or branches of the government of the city of New York when such

person shall be paid, by reason of such appointment, employment, or holding of office, solely or in part from funds of the city of New York, except to a temporary appointment or employment where peculiar, or exceptional qualifications of a scientific, professional or technical character are necessary. Prior to such temporary appointment or employment, evidence in writing shall be furnished that the services or work to be performed cannot be well done by any citizen and actual resident of the city of New York who is available, and that the non-resident person proposed to be appointed is generally recognized as one possessing such exceptional qualifications in a high degree. No appointment or employment under this section shall be valid unless the consent of the mayor and municipal assembly by a two-third vote of the voting power of each branch thereof shall be first obtained. They may require the municipal civil service commission to pass upon the matter and certify whether such appointment or employment be necessary, and, also, whether the non-resident person proposed therefor be competent and necessary, for lack of a citizen and actual resident of the city of New York who is available for appointment. Nothing herein shall be construed to apply to an official or employee of the city of New York whose duties regularly require his attendance in places outside of the city of New York.

" Sec. 2. Any person now in the employ of the city of New York who is not a *bona fide* resident or dweller in the city of New York shall have until January first, nineteen hundred and thirty-eight, to establish a residence in the city of New York and any failure to do so shall forfeit his or her appointment or employment. Any person who after appointment or employment shall become a resident and dweller outside the city of New York shall likewise forfeit his or her appointment or employment and shall be removed therefrom, provided, however, that where the enforcement of this section inflicts a financial hardship on persons now employed by the city of New York who have purchased a home outside the city of New York, exception may be made by a majority vote of the board of estimate and apportionment upon the employee's application for exemption from the conditions of this section.

" Sec. 3. If any term, part, provision or section of this act shall be held unconstitutional, illegal or ineffective in whole or in part or in its application to any action taken thereunder, or to any effect upon any individual, officer or employee, then to the extent that it is not unconstitutional, illegal, or ineffective, such term, part, provisions or section shall be in full force and effect; and such determination shall not be deemed to invalidate the remaining terms, parts, provisions or sections thereof.

" Sec. 4. This local law shall take effect January first, nineteen hundred and thirty-eight."

Answering the affidavit of plaintiff, the corporation counsel of the city of New York, who is the legal representative of the board of education, as well as of the city of New York, appears for all the defendants and presents an affidavit by the president of the board of education to the effect that the corporation counsel is of the opinion that the local law has no application to the teaching and supervisory staff. He reproduces the whole opinion of the corporation counsel.

The situation, therefore, is one where, curiously enough and by virtue of the statute and circumstances, the main defendant replies by an affidavit in which, in effect, it says that its own attorney has told it that plaintiff is right in his contentions. Under such circumstances the granting of a temporary injunction is obviously improper, because no threat of any dire consequences to any member of the teaching or supervising staff under the board of education is impending. And the other defendants, namely, the city officials, by not putting in any affidavit and by being represented by the same attorney, the corporation counsel, must be deemed to acquiesce in this position.

Plaintiff, however, urges the necessity of a declaratory judgment because of the importance of the public question involved, and because of the possibility that other city officials in the future might take a different position in the matter. The corporation counsel seems to agree upon the need, or at least the advisability, of a declaratory judgment.

Unfortunately, the parties have lost sight of the fact that such a judgment, even upon admitted facts, can be granted only after answer or default. No issue has yet arisen and the time to answer has not yet expired so that a motion for judgment on the pleadings is not possible. An order granting judgment, without any answer or default in the case, would be highly anomalous and hardly proper. Since an injunction *pendente lite* cannot be granted, there is nothing as yet before the court upon which it can base any order involving the legality or illegality of the statute. Looking at the matter conversely, if defendants had disagreed with plaintiff's method of securing the remedy, they could have moved to dismiss the complaint on the ground that it states no cause of action. That point has not been raised and the court will not of its own initiative dismiss the complaint, particularly as intervening defendants may seek to come in to raise an issue. In the present situation, however, the action is a mere request for an advisory opinion. There is an utter absence of any element of controversy. The parties are

unanimous in agreeing that the local residence law has no application to the teaching and supervising staff. The corporation counsel goes further and declares that it has no application to civil service employees of the board of education as well. That issue is not involved in the application by the teachers.

So far as my own opinion is concerned, although it cannot have the force of an order or judgment at this point, I fully agree that the local law does not apply to members of the teaching and supervisory staff of the city. I make this observation so that my disposition of the pending application should not be misunderstood. The Court of Appeals in *Gunnison* v. *Board of Education* (176 N. Y. 11), decided in 1903, has expressed itself in unmistakable terms on the principle of the freedom of the educational system from municipal management and control. As it says (on p. 23): "We have seen that the policy of this State for more than half a century has been to separate public education from all other municipal functions and intrust it to independent corporate agencies of its own creation, such as school districts and boards of education, with capacity to sue and be sued in all matters involved in the exercise of their corporate powers. We have seen that during this long period of time this court and all the courts of this State have accepted this rule and acted upon it," and (at p. 25): "It is difficult to see how the mere listing of the board of education among the city departments makes any change in its corporate powers, duties or liabilities. It possesses every power now that it ever had, and much more," and (at p. 26): "If enumerating the board as a corporate body among the departments did not make it any greater than before, it certainly could not make it any less. It was not shorn of the capacity to be sued which it always possessed, or of any of its powers or functions, by being promoted to the dignity of a department."

Therefore, the mere statement in the local law as to eligibility of appointment or employment to any office " in any of the departments, boards, bureaus or branches of the government of the City of New York when such person shall be paid, by reason of such appointment, employment, or holding of office, solely or in part from funds of the city of New York," even if in terms it includes employment under the board of education, cannot affect the independent rights of the board of education to disregard that provision so far as it applies to the members of the teaching and supervising staff.

Moreover, since the *Gunnison* decision, section 872 of the Education Law has been adopted, fixing the statutory policy of the State with reference to protection of members of the teaching and super-

vising staff in their tenure rights. Provisions of this character, which formerly were a part of the city charter, are now in the Education Law. Local laws passed by virtue of the Home Rule Amendment to the Constitution, article 12, section 1, cannot amend these, by reason of the restrictions in section 21 of the City Home Rule Law. That section provides that the local legislative body of a city may not adopt a local law which supersedes a statute now in force or hereafter enacted by the Legislature if such local law applies to or affects the maintenance, support or administration of the educational system in such city or the teacher's pension or retirement system in such city. In the light of the subsequent legislation the principles enunciated in the *Gunnison* case apply even with greater emphasis than they did in 1903. The local law is, therefore, so obviously inapplicable to teachers that a declaratory judgment would hardly be necessary except to secure an advisory opinion from the courts to support the corporation counsel's opinion.

Unfortunately, the machinery of the administration of justice does not lend itself to the pronouncement of an advisory opinion. The corporation counsel admits this by a reference to *Wardrop Co., Inc.*, v. *Fairfield Gardens, Inc.* (237 App. Div. 605). But he cites *Taylor-Fichter Steel Const. Co.* v. *Triborough Bridge Authority* (241 App. Div. 75), in which the court said that in a matter of sufficient public importance discretion should be exercised in favor of retaining jurisdiction in declaratory judgments. In that case, however, an issue of law had arisen between the parties. While the matter went to the Appellate Division in the first instance on an agreed statement of facts, there was, nevertheless, a disputed issue of law to be disposed of.

My attention has also been called to the very recent opinion by the Court of Appeals in *Dun & Bradstreet, Inc.*, v. *City of New York* (276 N. Y. 198), decided November 23, 1937. There a motion was made to dismiss the complaint because an action for a declaratory judgment was inappropriate and the remedy of certiorari was adequate. The court held that the remedy is applicable in cases like the one under consideration here, where a constitutional question is involved or the legality or meaning of a statute is in question and no question of fact is involved. In such cases the high court ruled that pure questions of law are presented, and it would be difficult to imagine a more appropriate case for the application of that remedy. But in that case there was a sharp issue as to the legality of the local sales tax as applicable to the nature of the services furnished by plaintiff. Here there is no issue of law at all except a future hypothetical one which might be raised by a new city official.

I do not conceive it the duty of the court to set up a straw man in the form of a suppositious issue in order to knock it down.

What I have said here is not to be deemed a criticism of the corporation counsel in not adopting an attitude of feigned opposition to plaintiff's interpretation of the local law.

The motion for an injunction or a declaratory judgment is denied, without prejudice.

(On Motion for Judgment, December 24, 1937.)

Plaintiff makes a motion for judgment on the pleadings in this action for a declaratory judgment. The complaint is intended to test the validity of Local Law No. 40 of 1937, known as the residence law, as applied to the teaching and supervising staff of the board of education of the city of New York. The motion comes to me a second time after I decided that a motion for judgment to declare the rights of plaintiff was premature before answer. I shall not repeat the facts stated in my previous opinion.

Since that decision defendant has interposed an answer. The denials on information and belief as to the non-residence of plaintiff may be disregarded. The separate defense, however, raises the issue that Local Law No. 40 applies to all persons whose salaries are paid from the funds of the city of New York. As teachers are thus paid, it is contended in the answer that that local law applies to them. In my previous opinion, in the absence of a specific legal issue, I gave my unofficial opinion that the members of the New York teaching and supervising staff of the board of education are officers or employees of the board of education and not of the city of New York. I shall not repeat the reasons given in that opinion but I shall confine myself to meeting one argument against this view, raised by the decision of the Court of Appeals in *People ex rel. Werner* v. *Prendergast* (206 N. Y. 405).

In that case the question arose whether an employee of the board of elections was in the municipal or State service. The court held the board of elections to be a local board, notwithstanding the fact that it was performing State functions. It thus expressed its views (206 N. Y. 405, at p. 409): " The police department and the departments of education and health in any city are engaged in the discharge of duties which very vitally affect the general public, and yet it would be opposed to widespread and well-settled opinion to hold that the members of such departments are State officials in the sense of being engaged in its service. This subject was considered by Judge GRAY in *People ex rel. Bush* v. *Houghton* (182 N. Y. 301) in the case of a member of the board of health of the city of Oswego who was to be appointed under the provisions of the

Public Health Law. In discussing the question whether such an official was a city officer under section 2, article 10 of the Constitution, he said (p. 305): ' It would seem that the provision for a local board of health in a city was sufficiently explicit as to the municipal character of the office; but it is argued, in substance that, because the common council has not the power to control the members of the board in the discharge of their duties, and because those duties do not relate to the exercise of corporate powers, they are not city officers. This argument is sought to be reinforced by the proposition that the duties of such officers are public in their nature and that they are not servants of the municipal corporation, but of the general public. I do not consider that this argument is quite sound. The members of the board of health might well be public officers, in the sense that their duties were rendered to the public under a general law of the State, and yet they could be city officers within the meaning of the Constitution. I think that the question does not turn so much upon whether the officers are the servants, or agents, of the city, as upon whether their offices were created for the city, unconnected with any other territory. The doctrine of the case of *People ex rel. Houghton* v. *Andrews* (104 N. Y. 570) and, as well, that of *People ex rel. Wood* v. *Draper* (15 id. 532, 539), may be, appropriately, referred to. They are subserving the general public interests in promoting and maintaining sanitary conditions in the locality; but they, equally, execute a corporate purpose of the municipal government, which, if it is not to be implied, is actually made a part of its charter by the laws. They are to be appointed under the statute, primarily, by the governing municipal authorities and the performance of their duties is confined territorially to the city. It seems to me that the situation was such as the People intended to be met, when establishing in the fundamental law of the State the principle of " home rule " for its political subdivisions. The appointment of the complainants by the county judge of the county was, of course, not an appointment by a municipal authority and it cannot be justified, unless the appointees are to be regarded as public officers, whose offices constitute no part of the city government. That they can be so viewed and that their appointment could validly be shifted from the mayor and common council of the city, in the event of unfilled vacancies in the board, upon a county officer, I do not believe.' "

I have quoted from that opinion in full in order to give the strenuous argument which can be found in support of the doctrine that the officers and employees of the board of education, while performing a State function, are local officials. Nevertheless, I am

compelled to hold that the reasoning which makes employees of the board of health and of the police department, etc., local officials, has no application to employees of the board of education.

In *People ex rel. Wells & Newton Co.* v. *Craig* (232 N. Y. 125, 135) the principles in the *Gunnison* case (176 id. 11) were approved and the following statement made as to the position of the local board of education: " The powers conferred upon the board of education to administer the public educational system within the confines of the city of New York were exclusive. The grant of the same to the board of education negatives authority in the municipality to exercise like powers. As between the two corporate bodies the relation of principal and agent does not exist."

Quoting from the *Gunnison* case, the *Craig* case says: " The only relation that the city has to the subject of public education is as the custodian and depositary of school funds, and its only duty with respect to that fund is to keep it safely and disburse the same according to the instructions of the board of education. The city as trustee has title to the money, but it is under the care, control and administration of the board of education."

And, likewise, in *Matter of Brennan* v. *Board of Education* (245 N. Y. 8, 13, at p. 15), quoting from *Matter of Fuhrmann* v. *Graves* (235 id. 77), the court expressed itself even more emphatically by saying: " The intent of the Legislature in enacting the Education Law is clear. It imposes upon boards of education, as separate corporate bodies representing the State, the responsibility of furnishing an efficient system of public education, * * * and in this respect they are not subject to or controlled by the city authorities. In order to enable such boards to properly discharge the duties thus imposed, they are clothed with authority to act independently of the city authorities."

The inference to be drawn from these decisions seems to be as follows: In the delegation of certain State functions, like those of police and health, the Legislature has conferred autonomous powers upon the corporation of the city of New York to carry on and administer this function. Officials and employees of boards administering these functions are, therefore, local officials and employees under the direction of the city of New York. In the delegation of the function of education, however, the Legislature has delegated the local power not to the corporation of the city of New York but to a separate corporation known as the board of education. To that corporation alone are the teaching and supervising officials subject to control. While the city is custodian of the funds, for educational purposes the board of education has power to administer the funds and control the members of the teaching and supervising staff

without interference by the city authorities. While the power to pass a local residence law applicable to the teachers, etc., would seem to be within the board of education of the city of New York, subject, perhaps, to review of its propriety by the State Commissioner of Education, no power to make any such regulation exists in the local legislative assembly.

The motion for judgment is granted and the defense stricken out. Settle order.