Matter of the Application of DAVID HIRSHFIELD, as Commissioner of Accounts of The City of New York, for a Warrant of Attachment, *v.* HENRY R. M. COOK, a Witness.

(Supreme Court, New York Special Term, May, 1919.)

Schools — public education a state function — municipal corporations — board of education of city of New York.

Attachment — when warrant of, to compel attendance of a witness, granted — Code Civ. Pro. §§ 854, 855 — Greater New York Charter, § 119.

Public education is a state not a municipal function and no conventional relation of principal and agent exists between a municipality and its board of education which is charged by the state with the administration of its educational system.

Where the commissioner of accounts of the city of New York, who under section 119 of the Greater New York Charter is authorized to make examination of the accounts of all elective as well as appointive officers, has undertaken to examine the accounts of the board of education and has issued a subpoena to the auditor of said board to appear and testify upon such examination, but the auditor under the advice and by the direction of the state commissioner of education refuses to obey the subpoena, a motion by said commissioner of accounts for a warrant of attachment to compel the attendance of the auditor as a witness in pursuance of sections 854 and 855 of the Code of Civil Procedure will be granted.

APPLICATION for a warrant of attachment to compel the attendance of a witness in pursuance of sections 854 and 855 of the Code of Civil Procedure.

William P. Burr, corporation counsel (Terence Farley and John Lehman, of counsel), for motion.

Morton Stein and Frank Gilbert, opposed.

HOTCHKISS, J. Under direction of the mayor, Commissioner Hirshfield has undertaken to examine the

accounts of the board of education of the city of New York. As such commissioner, he issued a subpoena to the respondent Cook, who is the auditor of the board, to appear and testify upon such examination. Under the advice and direction of the commissioner of education, Mr. Cook refused to obey the subpoena and application is now made by the commissioner for a warrant of attachment to compel the attendance of the witness in pursuance of sections 854 and 855 of the Code of Civil Procedure (See *Matter of Foster,* 139 App. Div. 759). Counsel for the witness expressly " waives all technicalities," if any there be, and takes the broad ground that the commissioner is without authority to examine the accounts of the board of education, and hence that the subpoena heretofore served upon the witness is without legal force. The office of the commissioner of accounts had its origin in the city charter of 1873 (Laws of 1873, chap. 335, § 106). The powers and duties of the office are at present defined by section 119 of the charter, which provides, among other things: " It shall be the duty of the commissioner of accounts, once in three months, to make an examination of the receipts and disbursements in the offices of the comptroller and chamberlain, in connection with those of all the departments and officers making returns thereto, and report to the mayor a detailed and classified statement of the financial condition of the city as shown by such examinations. He shall also make such special examinations of the accounts and methods of the departments and offices of the city * * * as the mayor may from time to time direct, and such other examinations as the said commissioner may deem for the best interests of the city, and report to the mayor and the board of aldermen the results thereof." He has power to examine the accounts of all elected as well

as appointed officers, and his power is not affected
by the similar authority with which the board of alder-
men is invested. *Matter of Hertle,* 54 Misc. Rep. 354;
120 App. Div. 717.   This section of the charter clearly
belongs to the remedial class of legislation which
should be liberally construed. *Matter of Hertle,
supra,* 120 App. Div. 721.   Although violence may not
be done to its language, its spirit and purpose should
prevail over its letter. *People ex rel. Wood v. Lacombe,*
99 N. Y. 43, 49; *Riggs* v. *Palmer,* 150 id. 506.   The Con-
stitution, as revised and established in 1894, provides:
'' The legislature shall provide for the maintenance and
support of a system of free common schools, wherein
all the children of this State may be educated. * * *
The corporation created in the year 1784 under the
name of the Regents of the University of the State of
New York, is hereby continued under the name of the
University of the State of New York.   It shall be gov-
erned and its corporate powers, which may be increased,
modified or diminished by the legislature, shall be
exercised by not less than nine regents.''   Const. art.
IX, §§ 1, 2.   It was in pursuance of this constitutional
grant that the Legislature adopted the present Educa-
tion Law, which in brief is a statutory code governing
the free schools of the state.   It is by no means new in
its entirety, but represents the mutations of more than
130 years of legislation upon cognate subjects enacted
in pursuance of similar constitutional authority.   With
respect to various matters embraced within the present
law, the decisions of our courts in the past upon funda-
mental questions or construing laws affecting boards
and officers existing thereunder, and whose duties were
germane to those conferred upon boards and officers
created by the present law, are to be accepted as
proper aids to construction.   Under the principles of
*Maxmilian* v. *City of New York,* 62 N. Y. 160, it is now

recognized as settled law that public education is a
state and not a municipal function; that boards of
education are branches of the state government
charged by the state with the administration of its
educational system (*Ham* v. *City of New York,* 70
N. Y. 459; *Schieffelin* v. *Komfort,* 212 id. 528); that
no conventional relation of principal and agent exists
between the city and such boards (*Titusville Iron Co.*
v. *City of New York,* 207 id. 203, 208); or, in the words
of Hiscock, J., in *Smith* v. *Board of Education,* 208
id. 84, 87: " The board of education of that city
* * * *speaking in general terms,* stands as a sub-
stitute for the latter as a corporate agency of the
state for the purpose of administering educational
matters." In 1917 (Laws of 1917, chap. 786) the
Education Law was amended by inserting a new article
known as article 33-a. It relates wholly to boards of
education throughout the state, and its sections are
made sections of the Education Law. By section 865,
subdivision b, the board in this city is reduced to seven
members, who are appointed by the Mayor. Subject
to the limitations contained in the act, the article
confers upon the board plenary powers with respect
to all matters pertaining to educational affairs within
the city. It is, among other things, authorized to pur-
chase sites, the title to be taken in the name of the city,
and to build, repair, etc., school buildings. The cost
of the common schools of the state is defrayed in part
by the state at large and in part from moneys raised
directly or indirectly by local taxation. The " general
fund " provided by the state is apportioned by the
commissioner of education among the various local
divisions and may be used only to pay teachers'
salaries (Education Law, § 490); that apportioned to
the city of New York is paid to the comptroller. Sec-
tion 877 of said article provides for the moneys to be

raised by the city by local taxation. Each year the board of education prepares and files with the board of estimate and apportionment an itemized " estimate " or budget for the ensuing fiscal year. § 877, subd. 1. " If the total amount requested in such estimate shall be equivalent to or less than four and nine-tenths mills on every dollar of assessed valuation of the real and personal property * * * liable to taxation * * * the board of estimate and apportionment shall appropriate such amount." If the estimate exceeds four and nine-tenths mills on the assessed valuation, " such estimate shall, as to such excess, be subject to such consideration and such action by the board of estimate and apportionment, the board of aldermen, and the mayor as that taken upon departmental estimates submitted to the board of estimate and apportionment. The board of estimate and apportionment is authorized to make additional appropriations for educational purposes authorized by this chapter. * * * The board of education shall administer all moneys appropriated or available for educational purposes in the city, subject to the provisions of law relating to the audit and payment of salaries and other claims by the department of finance." Id. subd. 7. By subdivision 8 the board is authorized to submit a " special estimate " to meet emergencies, but it is optional with the city authorities to appropriate the moneys thus called for. By section 879, subdivision 4, the amount to be appropriated by the city for new school houses and for remodeling old buildings is left to the discretion of the board of estimate and apportionment. The sums so appropriated are not directly raised by taxation, but by the sale of corporate " stock." Mr. Haig, the secretary of the board, in an affidavit submitted herewith, states that for the year 1919 there was appropriated for

estimated expenses of the board of education $3,025,000 in excess of the amount provided for by the tax of four and nine-tenths mills; that in January, 1919, the board requested an additional appropriation for the expenses of 1918 to the amount of $3,200,000, of which $600,000 has already been appropriated as requested, and that in addition to these extraordinary and discretionary appropriations, the board of estimate and apportionment on December 30, 1918, approved of a report of its committee on finance and budget commending the proposal and adopting it as the policy of the board to appropriate for the year 1919 $25,000,000, of which $10,000,000 was on said date actually appropriated for use as soon as the moneys were available. These enormous discretionary appropriations, or the greater portion of them, are to supply the demand for more school sites and buildings. Subdivision 10 of section 877 reads as follows: "A board of education shall not incur a liability or an expense chargeable against the funds under its control or the city for any purpose in excess of the amount appropriated or available therefor or otherwise authorized by law." By section 880, subdivision 1, all school moneys appropriated by the state or city " or any other funds belonging to a city and received from any source whatsoever for similar purposes, shall be paid into the treasury of such city and shall be credited to the board of education." " Such funds shall be disbursed only by authority of the board of education and upon written orders drawn on the city treasurer or other fiscal officer of the city." Subd. 2. " It shall be unlawful for a city treasurer or other officer having the custody of city funds to permit the use of such funds for any purpose other than that for which they are lawfully authorized, and such funds shall not be paid out except on audit of the board of education and the countersignature of

Supreme Court, May, 1919.      [Vol. 107.

the comptroller. * * * The board of education * * *
shall make, in addition to such classification of its
funds and accounts as it desires for its own use and
information, such further classification of the funds
under its management and control and of the disburse-
ments (*sic*) *thereof as the comptroller* * * * shall
require, and such board shall furnish such data in
relation to such funds and other disbursements as
the comptroller * * * shall require.''      Subd. 3.
Although the city authorities have no control over the
salaries of the teaching staff, yet they fix the salaries
of all other civilian employees of the board. *Matter of
Dobrovolny* v. *Prendergast,* 219 N. Y. 280; *Hogan* v.
*Board of Education,* 200 id. 370.   Section 226 of the
New York city charter confers upon the city authorities
power to prescribe reasonable terms and conditions
under which the money provided by its budget shall
be expended. *Matter of Dobrovolny* v. *Prendergast,
supra,* 284. The charter contains a number of sections
specifically related to the board of education.   By
sections 96 and 108 it is made one of the administrative
departments of the city.  See *Matter of Dobrovolny*
v. *Prendergast, supra.*   Doubtless, in thus naming the
board of education as one of the city's administrative
departments, the legislature had in mind the special
and limited province of the board in that behalf and
the perfectly consistent distinction between its inde-
pendence as a state agency in matters pertaining to
public education considered as a function of the state
and its relation to the city with respect of matters
purely municipal and the administration of these mat-
ters by the city through the agency of the board.  A
similar duality of agency exists with respect to a
number of city departments, conspicuous among which
is the water department.  See, *Oakes Mfg. Co.* v. *City
of New York,* 206 N. Y. 221, 227, 228.  Its existence

in the case of another public official has been recognized in the case of the county clerk. *People ex rel. Plancon* v. *Prendergast,* 219 N. Y. 252. So it has been held that the provisions of section 1541 of the charter prohibiting any city department from incurring any expense unless an appropriation therefor shall have been previously made applies to the board of education. *Clarke Co.* v. *Board of Education,* 156 App. Div. 842; affd., 215 N. Y. 646. Similarly it has been very recently held that under section 1542 of the charter, which says: " It shall be the duty of the heads of all departments and all officers of said city, and of all boards and officers charged with the duty of expending or incurring obligations payable out of the moneys raised by tax in said city, or any of the counties " therein, " so to regulate such expenditures * * * that the same shall not in any one year exceed the amount appropriated," etc., that the justices of this court in one of such counties cannot raise the salary of a court attendant after it has been fixed by them for the ensuing year under section 168 of the Judiciary Law and the sum so fixed has been carried into the city budget of that year. The following words from the opinion in the case referred to are apposite to the principles involved in the question at issue herein: " While it is true that the justices of the Supreme Court, Kings county, are not a part of the city government and are not the head of any city department, yet within the meaning of section 1542 we think they are officers charged with the duty of incurring obligations payable out of the money raised by taxation in a county contained within the territorial limits of the city." *Matter of Flaherty* v. *Craig,* 226 N. Y. 76. Without carrying the discussion further, it is evident that the city authorities are charged with many grave duties with respect of the disbursement both

of school moneys directed under the control of the board of education as well as other moneys raised by local taxation for school purposes; that the board of education has not unrestricted authority over the disposition of these moneys, but that the disbursement thereof is surrounded by numerous checks and balances which it is incumbent upon the city officials to observe and enforce. Whether this duty goes so far as to permit these officials to re-audit all vouchers of the board of education, so far as may be necessary to determine whether the sum involved is an unlawful as distinguished from an unwise payment from such funds as it is mandatory upon the city to pay over to the board (compare *People ex rel. Murphy* v. *Kelly,* 76 N. Y. 490, and *People ex rel. Burnet* v. *Jackson,* 85 id. 541, 545, 546), it is not necessary to decide.

For their guidance, and to the end that the city officials may intelligently and lawfully perform such administrative duties as are imposed upon them, it stands to reason that the financial books and records of the board of education must be examined. It is also clear that without information as to the honesty, wisdom and care with which the board of education disburses those moneys which it receives from the city as the result of the discretion of its officials, the exercise of such discretion on their part would in large measure be based upon blind credulity. In *Judges of Oneida Common Pleas* v. *People,* 18 Wend. 79, Tracy, Senator, said (p. 99) : " It (discretion) means, when applied to public functionaries, a power or right conferred upon them by law, of acting officially in certain circumstances, according to the dictates of their own judgment and conscience, uncontrolled by the judgment or conscience of others." It is inconceivable that the legislature intended any such inconsistency;

that having in mind the huge sums of money which the growing needs of our population demand, if our public schools are satisfactorily to perform the great task to which they are devoted, the city officials have been invested with discretionary power to appropriate adequately and at the same time have been denied access to the most efficient sources of information concerning the use made of the moneys by those charged with their disbursement, and whose methods of administering their trust must in large degree control the amount of money to be placed at their disposal. The official named by statute to secure the information available is the commissioner of accounts.

The respondent places much reliance upon the case of *Gunnison* v. *Board of Education,* 176 N. Y. 11, but there is nothing in that case which militates against the views hereinbefore expressed. The limits of the decision in the *Gunnison* case were pointed out and its true value as an authority was fixed in *Hogan* v. *Board of Education,* 200 N. Y. 370, 373. Nor is *Miller* v. *Tayntor,* 170 App. Div. 126, inconsistent with anything herein decided. The decision in that case had to do with the charter of the city of Binghamton, so far as it related to the powers of the local board of education over educational matters exclusively and not over financial matters.

Motion granted.