In the Matter of the Application of DAVID HIRSHFIELD, as Commissioner of Accounts of the City of New York, Respondent, for a Warrant of Attachment against HENRY R. M. COOK, a Witness, Appellant.

First Department, July 3, 1919.

Municipal corporations — city of New York — board of education as city department — jurisdiction of city over board of education — sections 96 and 108 of charter of Greater New York repealed in part — commissioner of accounts, power to examine accounts of board of education — witnesses — right to ignore subpœna to appear before commissioner of accounts in proceedings beyond his jurisdiction.

The board of education of the city of New York as it existed prior to 1917 was a State agency and also, to a limited extent, an administrative city department.

The Legislature in amending the Education Law by adding thereto article 33a (Laws of 1917, chap. 786) abolished existing municipal boards or departments of education and transferred all the powers thereof to the new boards of education for each city school district, as a part of the State Education Department, under the control and subject to the supervision of the Regents of the University of the State of New York and the Commissioner of Education, amenable to the provisions of the Education Law, with certain powers conferred by local laws to meet local conditions.

Section 96 of the Greater New York charter, in so far as it listed the department of education as one of the administrative departments of the city of New York, and section 108 thereof, providing that the head of such department shall be called the board of education, consisting of forty-six members, was repealed by section 3 of chapter 786 of the Laws of 1917.

The power of the commissioner of accounts to conduct an examination of departments and offices is limited by section 119 of the Greater New York charter to the departments and offices of the city of New York, and the counties within its corporate limits. He has no power to conduct

an examination into a department or office of the State government and has, therefore, no power to examine the accounts of the board of education.

That the city is required by the State to raise and pay money for the use of a department of the State, does not give the right to the commissioner of accounts to examine into the accounts and methods of said department.

The provision of section 877, subdivision 7, of the Education Law that where the estimate of the board of education shall exceed four and nine-tenths mills on the assessed valuation of real and personal property, "such estimate shall, as to such excess, be subject to such consideration and such action by the board of estimate and apportionment, the board of aldermen and the mayor, as that taken upon departmental estimates submitted to the board of estimate and apportionment," does not authorize the commissioner of accounts to institute an inquisitional investigation into the methods of the board of education and its accounts and to subpœna its officers and employees before him for that purpose.

Where the commissioner of accounts of the city of New York subpœnas a witness to appear before him in a proceeding to investigate the accounts and methods of the board of education, the witness may safely and properly disregard the subpœna, and an order granting a warrant of attachment against such a disobedient witness will be reversed.

LAUGHLIN and DOWLING, JJ., dissented upon opinion of HOTCHKISS, J., at Special Term.

APPEAL by Henry R. M. Cook, a witness, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 30th day of April, 1919, directing the issuance of a warrant of attachment against him and commanding the sheriff to bring him forthwith before the commissioner of accounts of the city of New York to be examined and testify upon the examination by the said commissioner of the accounts and methods of the board of education of the city of New York.

*Morton Stein,* for the appellant.

*John F. O'Brien* of counsel [*Terence Farley, William E. C. Mayer* and *John Lehman* with him on the brief; *William P. Burr, Corporation Counsel*], for the respondent.

*Frank B. Gilbert,* of counsel to the State Education Department and the Regents of the University.

PAGE, J.:

The commissioner of accounts, pursuant to the direction of the mayor of the city of New York, instituted an examina-

tion of the accounts and methods of the board of education. In the course of this examination he issued a subpœna, directing Henry R. M. Cook, the auditor of said board, to appear before him at his office to be examined under oath. Upon Cook's failure and refusal to attend, this proceeding was instituted and has resulted in the order from which the appeal herein was taken.

The question involved is the authority of the commissioner of accounts to conduct such an examination.

Section 119 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1916, chap. 517), relating to the powers of the commissioner of accounts, provides among other things that " He shall also make such special examinations of the accounts and methods of the departments and offices of the city and of the counties of New York, Richmond, Queens, Kings and Bronx, as the mayor may from time to time direct, and such other examinations as the said commissioner may deem for the best interests of the city, and report to the mayor and the board of aldermen the results thereof. For the purpose of ascertaining facts in connection with these examinations he shall have full power to compel the attendance of witnesses, to administer oaths and to examine such persons as he may deem necessary." The corporation counsel contends that the board of education is subject to this investigation, *first,* as an administrative department of the city, and, *second,* as a body empowered to expend moneys raised by taxation in the city of New York. In support of his first contention, he relies upon sections 96 and 108 of the Greater New York charter. Section 96 (as amd. by Laws of 1916, chap. 528) provides: " There shall be the following administrative departments in said city: * * * department of education. * * *." Section 108 provides: " The head of the department of education shall be called the board of education and shall consist of forty-six members as hereinafter provided." It has been held that the board of education is a corporation separate and distinct from the city of New York; that no relation of principal and agent exists between the two (*Titusville Iron Co.* v. *City of New York,* 207 N. Y. 203, 208), and that the board " speaking in general terms, stands as a substitute for the latter [the city]

as a corporate agency of the State for the purpose of administering educational matters " (*Smith* v. *Board of Education*, 208 N. Y. 84, 87), but nevertheless that it was also one of the administrative departments of the city. (*Clarke Co.* v. *Board of Education*, 156 App. Div. 842, 848; affd., 215 N. Y. 646.) The board of education, therefore, as it existed prior to 1917, was a State agency and also, to a limited extent, an adminstrative city department. This dual character of the board naturally gave rise to disputed questions of jurisdiction; the local city authorities attempting to regulate and control the activities of the board within the scope of its administration of educational matters, as a State agency, with resistance on the part of the board to the proper exercise by the local authorities of the supervision and control of the board in the discharge of those duties that were imposed on it as an administrative department of the city. One of the most potent methods of controlling the board of education, not alone in its administrative functions but with relation to its educational policy, has been the assertion of the right of the local municipal authorities to fix terms and conditions for their use upon appropriations made for the support and maintenance of the public schools, and to refuse such appropriations unless a pledge to such limitations of their use was given by the board of education. It has been the policy of the State, as shown by constitutional provision and legislative enactment, to remove the power of local municipal officers to control or hamper the development of the educational system or a proper and efficient administration of the schools of the State, and to vest those powers in the Education Department of the State government. In 1917 the Legislature incorporated into the Education Law (Consol. Laws, chap. 16; Laws of 1910, chap. 140) a new article, 33-a, by an act entitled " An Act to amend the Education Law, by providing for a board of education in the several cities of the State" (Laws of 1917, chap. 786), the provisions thereof becoming sections 865 to 881, both inclusive, of the Education Law. It is the contention of the city that this statute did not change the character of the board of education in New York city except to reduce its membership from forty-six to seven; that it still remained the head of the department of education of the city of New York. In my opinion, this contention is

not sound. By chapter 786 of the Laws of 1917, thirty-one sections and seven out of eight subdivisions of another section of the Greater New York charter were expressly repealed. The titles of these repealed sections, as they appeared in the charter of 1901 unamended, throw a light upon the legislative policy. They were as follows: 1056. " School age of children; " 1059. " Money to conduct schools to be raised by taxation; " 1060. " Special and general school funds; all moneys to be administered by board of education; " 1061. " Board of education; how constituted; president; vacancies; members to serve without pay; " 1062. " Id.; to possess powers and privileges of a corporation; " 1063. " Id.; to appoint an executive committee; powers of committee; " 1064. " Id.; to be representative of school system; " 1067. " Board of education; to appoint certain officers, clerks, etc., and fix their salaries; " 1068. " Id.; power to enact by-laws, rules and regulations; " 1070. " Id.; secretary; duties; secretary and chief clerk may administer oaths; " 1071. " Id.; provide for branches, etc., in boroughs; " 1072. " Superintendent of school buildings; oath and security by; subject to regulations of board; vacancy in office; " 1073. " Id.; deputy in each borough; plans for school buildings; " 1074. " Id.; appointment of janitors; " 1075. " Board of education; purchase of, and regulations regarding supplies; " 1076. " Superintendent of supplies; oath and security by; subject to regulations of board; vacancy; deputy superintendents and subordinates; depots of supplies; " 1077. " City superintendent of schools; rights and duties; " 1078. " Id.; further duties; annual report; clerks of main office; " 1079. " City superintendent, associate city superintendents, board of superintendents, district superintendents and directors; " 1080. " General duties of district superintendents; " 1081. " Board of superintendents; lists of principals, etc., to be kept by; where principals report; " 1082. " Promotion or transfer of pupils; rules and regulations; " 1083. " Recommendations of and requisitions for text books and scholastic supplies; " 1084. " Changing grades of schools and classes; courses of study; " 1085. " Duties of the board of superintendents, city superintendent, district superintendents and supervisors with reference to special branches; " 1086. " Methods of teaching. Syllabuses of topics; " 1087. " Power

to create local school board districts; presidents of the boroughs to appoint members of the local school boards; terms, organization, etc., of local school boards;" 1088. "Duties of local school boards;" 1089. "Board of examiners; teachers' licenses, etc.;" 1090. "Appointment and resignation of principals and teachers;" 1093. "Charges against principal and teachers and others; proceedings thereon." All of section 1069 was repealed except subdivision 8, which had been added thereto by chapter 479 of the Laws of 1914, which gave to the board of education additional powers to enforce the Compulsory Education Law and school census. All that remains of title 1 of chapter 18 of the Greater New York charter are provisions dealing with the property under the control of the board of education, power to fix salaries, and certain other powers that would appertain to local conditions which could not properly be covered by a general law applicable throughout the State. Article 33-a of the Education Law (as added by Laws of 1917, chap. 786) establishes a board of education in each city of the State to consist, in a city having a population of 1,000,000 or more, of seven members. It makes provision for the eligibility, appointment and term of office of members of such boards of education; prescribes their times of meeting; defines their powers and duties; provides for the appointment of subordinate officers and employees; makes general provision for the raising of money by the local authorities in each city, and the preparation and submission of estimates by the board of education therein. In cities having a population of 1,000,000 or more, such estimates are required to be submitted to the board of estimate and apportionment, and if the total amount requested in such estimate shall be equivalent to or less than four and nine-tenths mills on every dollar of assessed valuation of the real and personal property in such city liable to taxation, the board of estimate and apportionment shall appropriate such amount. If the total amount contained in such estimate shall exceed the four and nine-tenths mills, such estimate shall, as to such excess, be subject to such consideration and such action by the board of estimate and apportionment, the board of aldermen and the mayor, as that taken upon departmental estimates submitted to the board of estimate and apportionment. It

provides further for the custody of funds by payment into the treasury of the city and directs that such funds shall be credited to the board of education and disbursed only by authority of the board of education and upon written orders drawn on the city treasurer or other fiscal officer of the city, as therein prescribed. Section 2 of the act of 1917 provides that "Each city in which the school district boundaries are coterminous with the city boundaries is hereby declared to be a city school district." It is the evident intention of the Legislature, as demonstrated by this act, to abolish municipal boards or departments of education and transfer all the powers thereof to the new boards of education for each city school district, as a part of the State Education Department, under the control and subject to the supervision of the Regents of the University of the State of New York and the Commissioner of Education, amenable to the provisions of the Education Law, with certain powers conferred by local laws to meet local conditions.

When this act became a law, the department and board of education of the city of New York was clothed with and executed the powers conferred by this act. But when the new board, consisting of seven members, was appointed and qualified, the department and board of education of the city of New York ceased to exist, and all the powers, jurisdiction and authority that were conferred by this act became vested in the board of education for the school district of the city of New York. Section 96 of the Greater New York charter, in so far as it listed the department of education as one of the administrative departments of the city of New York, and section 108 thereof, providing that the head of such department shall be called the board of education consisting of forty-six members, must be deemed to have been repealed by section 3 of chapter 786 of the Laws of 1917, which provides that "all acts or parts of acts, general or special, inconsistent with the provisions of this act are hereby repealed." The power of the commissioner of accounts to conduct an examination of departments and offices is limited by section 119 of the Greater New York charter to the departments and offices of the city of New York and of the counties within its corporate limits. He has no power to conduct such an examination into a department

or office of the State government. That the city is required by the State to raise and pay money for the use of a department of the State, does not give the right to the commissioner of accounts to examine into the accounts and methods of such department.

The law is explicit that up to the amount of four and nine-tenths mills of the total assessed valuation of real and personal property in the city subject to taxation, the board of estimate and apportionment must appropriate the amount requested by the board of education. For the current year, the board of education filed with the board of estimate and apportionment an itemized estimate of such sums of money as it deemed necessary for the purposes specified in subdivision 1 of section 877 of the Education Law. This estimate exceeded the sum of four and nine-tenths mills on the assessed valuation of real and personal property by several millions of dollars. The board of estimate and apportionment appropriated an amount which to an extent exceeded the sum of four and nine-tenths mills on said property, but not the full amount requested. The right to examine by the commissioner of accounts is sought to be justified by reason of this excess request, the claim being that he has the right to examine into the accounts and methods of the board of education in expending the mandatory amount and report to the mayor, who, in turn, as a member of the board of estimate and apportionment, can decide whether these moneys have been wisely and properly expended and whether the additional sum requested is necessary. The Education Law (§ 877, subd. 7) provides that if the total amount requested exceeds such sum, " such estimate shall, *as to such excess*, be subject to such consideration and such action by the board of estimate and apportionment, the board of aldermen, and the mayor as that taken upon departmental estimates submitted to the board of estimate and apportionment." What that action can be is detailed in section 226 of the Greater New York charter (as amd. by Laws of 1917, chap. 258). It is not intimated in that section, nor any other section of the charter, that an examination such as the commissioner of accounts has instituted is or can be maintained to ascertain whether the departmental estimate should be granted, reduced or otherwise modified. The Education Law provides checks and safeguards

against the improper expenditure of funds by the board of education and a proceeding for the investigation of complaints against that board. There is, therefore, no necessity for the exercise of this power by the commissioner of accounts.

The board of education offered to allow its books of accounts and vouchers to be examined. It objected to an inquisitional investigation into its methods and accounts, and the haling of its officers and employees before an officer who has no legitimate purpose to serve, to permit the conducting of an examination into its affairs. The commissioner of accounts only has authority to issue subpœnas in investigations that are within his jurisdiction. As he had no jurisdiction of the subject-matter, the subpœna issued by him could be safely and properly disregarded.

The motion for a warrant of attachment against the "witness" Cook should have been denied. The order is reversed, with ten dollars costs and disbursements to the appellant, the warrant vacated, and the motion denied.

CLARKE, P. J., and MERRELL, J., concurred; LAUGHLIN and DOWLING, JJ., dissented upon the opinion of HOTCHKISS, J., at Special Term [107 Misc. Rep. 130].

Order reversed, with ten dollars costs and disbursements, the motion denied, and the warrant vacated.