The judgment and order appealed from should be reversed and a new trial granted.

HIRSCHBERG, J., concurred ; BARTLETT, J., concurred in result ; WOODWARD and JENKS, JJ., dissented.

Judgment and order of the County Court of Kings county reversed and new trial ordered, costs to abide the event.

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. MINNIE R. MASTEN, Respondent, *v.* WILLIAM H. MAXWELL, as City Superintendent of Schools of the City of New York, Appellant.

In the Matter of the Application of KATE M. MURPHY, Respondent, *v.* WILLIAM H. MAXWELL, as City Superintendent of Schools of the City of New York, Appellant.

*A school by-law, declaring vacant the place of a teacher who marries, is valid — the marriage creates a vacancy — no charges need be preferred.*

A by-law of the school board of the borough of Brooklyn providing, " Should a female principal, head of department or teacher marry, her place shall thereupon become vacant, but her marriage shall not operate as a bar to her reappointment should it be deemed to the interests of the school to retain her services," is valid in so far as it declares against the retaining of female teachers who marry.

The purpose of such rule is not to discourage marriage, but rather, in the public interest, to dispense with the services of a class of teachers who assume new duties, which, it is thought, would tend toward the disparagement of the school interest.

Under such by-law, the marriage of a female teacher creates, *ipso facto*, a vacancy in her position.

It is not necessary that charges should be preferred against such a teacher and a hearing had thereon, as section 1114 of the Greater New York charter, which provides that such a course shall be adopted where a teacher has been guilty of "gross misconduct, insubordination, neglect of duty or general inefficiency," does not apply to the case.

APPEAL in the first above-entitled proceeding by the defendant, William H. Maxwell, as city superintendent of schools of the city of New York, from an interlocutory judgment of the Supreme Court in favor of the relator, entered in the office of the clerk of the county of Kings on the 12th day of March, 1903, upon the decision of the court, rendered after a trial at the Kings County Special Term, sustaining the relator's demurrer to the return to an alternative writ of mandamus herein, and awarding the relator a peremptory writ of mandamus.

Appeal in the second above-entitled proceeding by the defendant, William H. Maxwell, as city superintendent of schools of the city of New York, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 17th day of November, 1902, granting the petitioner's application for a peremptory writ of mandamus; and also from an order entered in said clerk's office on the 17th day of March, 1903, denying the appellant's motion for a reargument of the motion for such peremptory writ of mandamus.

*James McKeen* [ *Walter S. Brewster* with him on the brief], for the appellant.

*Conrad Saxe Keyes*, for the respondents.

HOOKER, J..

The appeal in these two proceedings presents for consideration the questions, *first*, whether a recent by-law of the school board of the borough of Brooklyn declaring against the continuance on the teaching force of a female teacher who marries was reasonable and valid, and, *second*, whether the marriage of such teacher did *pro*

*facto* vacate her position, or whether it was necessary to prefer charges and effect her removal in that manner.

Section 302 of the by-laws, in force at the time of the marriage of the relators, provided, in part, as follows: " Should a female principal, head of department or teacher marry, her place shall thereupon become vacant, but her marriage shall not operate as a bar to her reappointment should it be deemed to the interests of the school to retain her services."

At Special Term it seems to have been conceded that in so far as it declared against the retaining of teachers who marry, the by-law was valid, and we believe that such is the correct view. Our attention has not been directed to any adjudicated cases which aid in a determination of this branch of the question, but the trend of modern thought must be admitted to be strongly in support of the status at which this by-law aims. While many new fields of endeavor have of recent years been opened to progressive women, the principal duties and sphere of the wife and the mother will always remain, and cannot be said to be such as are not calculated, except in rare cases, to interfere with that degree of regularity and devotion which is required of the members of a teaching force in so large a community. The purpose of the rule is not to discourage marriage; it is rather, in the public interest, to dispense with the service of that class of teachers who assumed new duties and stepped into another field, and where it is thought their environments would tend toward the disparagement of the school interests.

The effect of the by-law presents a more serious question. It was adopted pursuant to the authority of the following provision of the Greater New York charter: " Each school board, subject to the direction and control of the board of education and in accord with the by-laws of the board of education, shall have the safe keeping of all the premises and other property used for or belonging to the schools in the borough. A school board shall have power to choose and determine the sites for all school buildings, and for additions thereto, within its jurisdiction, and it shall be its duty to transmit from time to time such determinations to the board of education, by resolutions which shall be certified and transmitted in accordance with the by-laws thereof. Each school board shall have power to adopt by-laws regulating the exercise of all

Second Department, October Term, 1903. [Vol. 87.

powers and duties vested in it by law, which by-laws, however, shall not conflict with the by-laws of the board of education which that board may be authorized by law to adopt in the premises, nor with the provisions of this chapter. And the said school board shall have power to provide by such by-laws for the government and management of the schools in the borough, for defining the duties and regulating the exercise of the powers of its members and committees and of all school officers, the borough superintendent and associate superintendents, principals or teachers, clerks, assistants and employes, and for the regulation of all disbursements from the general school fund in the borough, and for the promotion and welfare and best interest of all matters committed to it concerning the public schools and the public school system of the city in said borough." (Laws of 1897, chap. 378, § 1090.)

The by-law was continued in force until and after the marriage of the relators, under the following authority of the revised charter: "The board of education shall have power, subject to the provisions of law and of this act, to enact by-laws, rules and regulations for the proper execution of all duties devolved upon the board, its members and committees and upon the several local school boards; for the transaction of all business pertaining to the same; for defining the duties of the city superintendent of schools, the superintendent of school buildings, the superintendent of school supplies, of its auditor or auditors, its clerks and subordinates; for regulating the manner of making disbursements from any of the funds apportioned to any borough for school purposes, for the proper execution of all powers vested in it by law, and for the promotion of the welfare and best interests of the public schools and public school system of the city in the matters committed to its care. Until the board of education shall act under the provisions of this section the by-laws, rules and regulations of the board of education and of the several borough school boards in force on the first day of January, nineteen hundred and two, shall remain in full force and effect so far as they are not inconsistent with the provisions of this act and are applicable." (Laws of 1901, chap. 466, § 1068.)

So long, therefore, as the by-laws of the school board were not inconsistent with the provisions of the charter, they had, as far as school matters in the borough were concerned, the sanction and

authority of the statute, which gives significance to the words "subject to the limitations of this act," appearing in section 1117 of the original charter in force at the time. That section provided in part as follows: "All superintendents, assistant or associate superintendents, and all principals, teachers and other members of the educational staff in the public school system of any part of The City of New York as constituted by this act, shall continue to hold their respective positions and to be entitled to such compensation as is now provided or may hereafter be provided by the various school boards, subject to the limitations of this act, and to reassignment or to removal for cause, as may be provided by law."

Section 1114 of the original charter provided for the preferring of charges against a teacher for "gross misconduct, insubordination, neglect of duty or general inefficiency," and for the hearing and trial of such charges. The respondents claimed that their removal could not be effected except as the result of such a trial after charges had been preferred. We think, however, that the marriage, *ipso facto*, created the vacancy. The marriage was neither "gross misconduct, insubordination, neglect of duty or general inefficiency," and it would seem that charges merely that a teacher had married would be difficult to sustain under the provisions of section 1114. If the general subject of the by-law was valid, as we have held it to have been, a declaration as to its effect, for the purpose of accomplishing its enforcement, was properly and not unreasonably made part thereof, so long as such a declaration was not in conflict with the charter which empowered the board to create such by-laws. Under section 1117 the tenure of teachers was to be "subject to the limitations of this act." That act permitted limitations by by-laws, so long as they were consistent therewith. The portion of the by-law in question which declared against the continued employment of married women was not inconsistent with the charter, nor was the portion which declared its effect, and hence it was valid as a whole.

The appeal from the order denying the motion for a reargument in the Murphy case should be dismissed, without costs, and the order granting a peremptory writ of mandamus, in the same case, should be reversed, and an alternative writ directed to issue on the disputed facts, with costs to abide the event; in the Masten case

the order and judgment sustaining the demurrer to the return to the alternative writ should be reversed, with costs.

HIRSCHBERG, J., concurred.

HIRSCHBERG, J. (concurring):

I concur with Mr. Justice HOOKER. The by-law which terminates the employment of a female teacher upon her marriage seems valid and reasonable, and no element of offense exists to justify the suggestion that she must be removed on charges. Referring to the case of *Steinson* v. *Board of Education of N. Y.* (165 N. Y. 431; S. C., *sub nom. People ex rel. Steinson* v. *Board of Education*, 158 id. 125) in the recent decision in *Gunnison* v. *Board of Education* (176 N. Y. 11), Judge O'BRIEN said (at p. 19) that it was therein "distinctly held that the legal relation between the board and the teacher is one of contract." The relation between the parties· being, therefore, for the purposes of this case contractual and not official, it would seem right that the contract should cease with the termination on the part of the teacher of the right to contract. While single her services belong to herself; when married they belong to her husband. Having voluntarily assumed a relation which gives to another the legal right to dispose of her time and labor, the teacher cannot complain of a regulation by which her independent contract is made to end when her power to contract independently ends, especially where the regulation is itself a part of the original contract. The marriage being admitted by the petitioner, in these cases no proof of the fact was required, and as it appeared on the face of the papers that the relators' employment had ceased, the applications for mandamus should have been denied. As, however, the relator Kate M. Murphy claims to have been reappointed subsequently to her marriage, which claim is disputed on the part of the appellant, it is proper that this fact should be tried by alternative writ inasmuch as the by-laws provide for such reappointment in certain circumstances.

WOODWARD, J., concurred; GOODRICH, P. J., dissented.

Judgment sustaining demurrer reversed, with costs. Appeal from order denying motion for reargument dismissed, without costs. Order granting peremptory writ of mandamus reversed, and alternative writ directed to issue, costs to abide the event.