Robert O. Brink, J.
This is a motion commenced pursuant to article 78 of the Civil Practice Act in which the petitioner, a teacher in the Union Endicott Central School District, requests an order requiring the respondents, the Superintendent of Schools and the members of the Board of Education, to restore the petitioner to the payroll of the school district and requiring payment from September, 1962 to present, as well as reinstatement as a full-time mathematics teacher in the Union Endicott High School.
The petitioner, a 1954 graduate of the University of Scranton, was issued on January 5,1955, a certificate by the Commissioner of Education, known as a “ Renewable Form ”, which may be renewed yearly for a period of five years. The regulations of the Commissioner of Education provide that at the end of five years, when 30 hours of postgraduate work have been completed, a permanent certificate is to be issued to the teacher. (Regulations of Comm, of Educ., § 133.) The provisional certificate was renewed each year until September 1,1960.
In 1956, petitioner received a probationary appointment to teach mathematics at Union Endicott High School. At the end of three years, on April 23, 1959, petitioner received notice of his appointment to tenure, effective September, 1959, pursuant to section 3012 of the Education Law.
Since petitioner had not completed the requisite number of postgraduate courses to receive a permanent certificate, he was permitted to teach during the 1961-1962 school year by a waiver or excuse of default, pursuant to subdivision 6 of section 3604 of the Education Law.
*257 On June 15,1962, after a series of correspondence between the petitioner and Superintendent of Schools discussing petitioner’s lack of qualifying status, Robert D. Agone, the Superintendent of Schools, informed the petitioner by letter that the excuse of default (referred to above) would expire on June 30, 1962, and since valid certification was still lacking, petitioner’s employment would be terminated as of July 16, 1962. In September, 1962, the petitioner appeared at the school ready, willing and able to perform his services as a teacher, but was denied the right to teach. A provisional certificate in mathematics was issued to the petitioner dated October 15, 1962, and made retroactive to September, 1962.
The petitioner claims that the denial of his right to teach, without written charges and a hearing pursuant to section 3012 of the Education Law, is an arbitrary, unreasonable and capricious action which deprives him of his profession and livelihood without due process of law. He argues that once he obtained tenure, he could be relieved only for a reason specifically prescribed by the tenure statute, i.e., insubordination, immoral character or conduct unbecoming a teacher; inefficiency, incompetency, physical or mental disability or neglect of duty. That in the absence of a showing of one of these reasons, after a proper hearing before the Board of Education, his tenure protected him from dismissal for any other reason.
The respondents argue that the Commissioner of Education has the right, pursuant to section 3004 of the Education Law, to prescribe regulations governing the certification of teachers employed in all public schools of the State. They cite section 3001 of the Education Law, entitled Qualifications of Teachers, which states:
“No person shall be employed or authorized to teach in the public schools of the state who is:
‘ ‘ 1. Under the age of eighteen years.
“ 2. Not in possession of a teacher’s certificate issued under the authority of this chapter * * * ”.
Since the petitioner had not obtained the certificate as provided by the Commissioner’s regulations, respondents argue they had no right to continue his employment. They further call the court’s attention to section 3009 and section 3010 of the Education Law, which provide:
“ § 3009. Unqualified teachers shall not be paid from school moneys. No part of the school moneys apportioned to a district shall be applied to the payment of the salary of an unqualified teacher, nor shall his salary, or any part thereof, be collected by a district tax except as provided in this chapter.
*258 1 ‘ § 3010. Penalty for payment of unqualified teacher. Any ■ trustee or member of a board of education who applies, or directs, or consents to the application of, any district money to the payment of an unqualified teacher’s salary, thereby commits a misdemeanor ’ ’.
Respondents argue that the grounds for removal, stated in the tenure statute, have no relation to the ability and qualifications of a teacher, and that nowhere in the tenure statute is there any indication that it was intended to protect an unlicensed teacher.
The issue squarely before this court is whether the procedure for removal provided for in the tenure statute, section 3012 of the Education Law, is exclusive, and whether this statute limits the right of the Commissioner of Education to prescribe regulations which might result in removal of a teacher in a way other than that provided by the tenure statute.
Section 3012 of the Education Law provides as follows :
“Tenure: certain union free school districts. 1. Teachers, principals, supervisors and all other members of the teaching and supervising staff shall be appointed by the board of education of a union free school district having a population of more than forty-five hundred inhabitants and employing a superintendent of schools, upon the recommendation of such superintendent of schools, for a probationary period of three years. The service of a person appointed to any of such positions may be discontinued at any time during such probationary period, on the recommendation of the superintendent of schools, by a majority vote of the board of education.
“2. At the expiration of the probationary term of a person appointed for such term," subject to the conditions of this section, the superintendent of schools shall make a written report to the board of education recommending for appointment on tenure those persons who have been found competent, efficient and satisfactory. Such persons, and all others employed in the teaching, examining or supervising service of the schools of such union free school district, who have served the probationary period as provided in this section, shall hold their respective positions during good behavior and efficient and competent service, and shall not be removed except for any of the following causes: (a) insubordination, immoral character or conduct unbecoming a teacher; (b) inefficiency, incompetency, physical or mental disability, or neglect of duty. Each person who is not to be recommended for appointment on tenure, shall be so notified by the superintendent of schools in writing not later than sixty days immediately preceding the expiration of his probationary period.
*259 “ 3. All charges against a person enjoying the benefits of tenure as provided in this section shall be made to the board of education by the superintendent of schools or by charges in writing filed with the clerk of the board of education. No teacher on tenure shall be dismissed, however, unless furnished with a written statement, specifying in detail the charge or charges against said teacher, signed by the proper officer of the board of education and naming a date and place at which the teacher may appear before the board of education and answer said charge or charges.”
In determining the intent of the Legislature, it is helpful to examine prior statutes leading up to the present ones. “ In construing a statute, light is generally thrown upon its meaning by considering any other statute upon the same subject, which either preceded or followed it.” (People ex rel. Callahan v. Board of Educ. of City of N. 7., 174 N. Y. 169, 172 [1903].)
Prior to 1937, teachers in union free school districts, and consequently central school districts (Education Law, § 1805) did not receive tenure. They were limited to tenure by contract which expired automatically at the expiration of the contract. When section 312-a (the forerunner of § 3012) became effective on July 1, 1937, teachers obtained similar rights to those which had been already provided to teachers in city school districts for many years. (Matter of Carter v. Kalamejski, 255 App. Div. 694, affd. 280 N. Y. 803 [1939].) Section 2573 of the present Education Law provides for tenure in city school districts above a certain population. Thus, it was to extend this same right to teachers in other types of districts, that the precursor to section 3012 was enacted. Section 2573 (dealing with city districts), referred to in various sections of the statute as section 2523 (prior to amendment), was first enacted as section 872 of the Education Law of 1910, as added by chapter 786 of the Laws of 1917.
Prior to the incorporation of tenure provisions into the Education Law, tenure was provided by the Greater New York Charter (L. 1901, ch. 466) (Eriksen v. City of New York, 167 Misc. 42 [Supreme Ct., N. Y. County, 1937]). The charter, therefore, is the forerunner of modern tenure provisions, and by shedding light on the legislative intent of the early statutes, a better understanding of today’s statutes will be obtained.
The Court of Appeals in People ex rel. Callahan v. Board of Educ. of City of N. Y. (174 N. Y. 169, 172-173 [1903] said:
1 ‘ According to the charters of the cities of New York and Brooklyn, as they stood just before the act of consolidation went into effect, the board of education, in each, could remove *260 teachers arbitrarily and without a trial. * * * As the law was, therefore, when the present city of Few York was created, the teachers of the public schools in Few York and Brooklyn, with certain exceptions not now material, were not protected, in the absence of a contract, in holding their positions even if they had earned them by many years of faithful and efficient service. They could, one or all, be removed with or without cause, investigation or trial, at the will of the power that appointed them. #
“ By the charter of the greater city, however, as originally passed, a change was made in this regard. For the first time the statute authorized charges to be preferred against a teacher, a formal trial had and, in case of conviction, punishment inflicted by a fine, suspension for a fixed time without pay, or dismissal. (L. 1897, eh. 378, § 1114.) Thus instead of the old method of arbitrary removal, there was substituted a method of removal after notice and an opportunity to be heard. This prepares us to search for some express limitation upon the discretionary power which formerly existed, as otherwise a trial upon charges before removal would be useless, for if the board could remove at will, why should they have recourse to a trial? ”
This, then, was the first time that a teacher would have protection from arbitrary removal. The court indicated that the school department was given the right under the statute, to drop a teacher from the rolls during the probationary period, and after a license was granted, the statute attaches a permanency of tenure to the appointment. It must be emphasized that the license referred to in the Callahan case is equivalent to the one received by Kobylski, in the instant case, in 1959, rather than a certificate from the Commissioner. However, the court continues by pointing out that even after all the above precautions are taken, a teacher may turn out ‘ ‘ immoral, insubordinate, negligent, or inefficient ” and therefore provision is made for removal upon these grounds after a hearing. “ Some fact must be alleged and proved to justify it, or the scheme to protect the tenure of teachers can be defeated * * #. If this can be done without a hearing, it may be done after the lapse of a long time and for personal or political reasons to the manifest detriment of the schools. * * * The defendant, in good faith and through a misconception of the statute, thus exercised a power which it did not possess ”. (pp 178-179.)
The court has clearly expressed the danger from permitting arbitrary removal by its finding that a teacher may be removed only after a hearing. (See, also, Bogert v. Board of Educ. of City of N. Y., 106 App. Div. 56 [2d Dept., 1905].)
*261 In view of the interpretation given this legislation under the New York Charter, this court holds that the case of People ex rel. Murphy v. Maxwell (177 N. Y. 494 [1904], revg. 87 App. Div. 131, revg. sub nom. Matter of Murphy, 39 Misc. 166 [Supreme Ct., Kings County, 1902]) ought to control in the instant case. That case involved the same statute which the Court of Appeals discussed in the Callahan case (supra). Since the present section 3012 of the Education Law is an outgrowth of the New York Charter, this court holds that the reasoning in that case is applicable.
In the Murphy case, the relator was appointed a teacher in the public schools of the then City of Brooklyn. There was in existence a by-law of the Board of Education of the city which provided that when a female teacher married, her place became vacant. Under the by-laws of the City Board of Education, it was the duty of the Superintendent of Schools to certify to the auditor the names and salaries of the teachers, without which certification they were unable to draw their pay. The Superintendent refused to certify the teacher, who applied for a peremptory writ of mandamus, directing the respondent to recognize her as a teacher of the public schools and to certify her name to the auditor that she might be paid her salary.
The Special Term said at page 168: “ It is evident that the Legislature intended that teachers should not be removed from their positions except after a trial upon charges preferred against them. * * * But the difficulty with the by-law in question is that it declares a vacancy to exist as the result of the marriage of a female teacher ipso facto, or in other words, it seeks to accomplish her removal without the preferment of charges, and to this extent it is obnoxious to the statute and inoperative.”
The Appellate Division reversed, arguing very similarly to the arguments of the respondents at bar. The by-laws of the board, they held, were not inconsistent with the provisions of the charter. That court citied sections 1117 and 1114 of the charter pertaining to dismissal and grounds for which charges of dismissal against a teacher may be preferred. The court said (p. 135): “ The respondents claimed that their removal could not be effected except as the result of such a trial after charges had been preferred. We think, however, that the marriage, ipso facto, created the vacancy. The marriage was neither ‘1 gross misconduct, insubordination, neglect of duty or general inefficiency,” and it would seem that charges merely that a teacher had married would be difficult to sustain under the pro *262 visions of section 1114. If the general subject of the by-law was valid, as we have held it to have been, a declaration as to its effect, for the purpose of accomplishing its enforcement, was properly and not unreasonably made part thereof, so long as such a declaration was not in conflict with the charter which empowered the board to create such by-laws. Under section 1117 the tenure of teachers was to be ‘ subject to the limitations of this act.’ That act permitted limitations by by-laws, so long as they were consistent therewith.”
In the instant case, the respondents argue that none of the grounds provided for under the tenure statute include dismissal for the type of failure to obtain certification here involved, and that charges would be difficult to sustain under the provisions of subdivision 3 of section 3012. The reasoning, therefore, leads respondents to the conclusion that this type of regulation was not intended by the Legislature to be covered by the requirements under the tenure law.
The Court of Appeals in the Murphy case (177 N. Y. 494, 497-498) rejected the conclusion of the Appellate Division in the following language: “ Now, bearing in mind the mandate of section 1117, that the teachers shall continue to hold their positions subject only to the limitations of the statute and removal for cause and that the only grounds for removal provided by the charter are gross misconduct, insubordination, neglect of duty or general inefficiency, we think that these statutory provisions are also necessarily exclusive. It is unreasonable to believe that the draftsmen of the Greater New York charter or the legislators who enacted it, having before them as the foundation of that charter the Consolidation Act of 1882, which prescribed the only method in which a school teacher could be removed, and having themselves provided in the charter for dismissal for specified causes, should have intended by the grant of any general power to the board of education to authorize the removal of teachers from their employment on any other grounds or in any other manner than those stated in the statute.” (See, also, People ex rel. Peixotto v. Board of Educ. of City of N. Y., 212 N. Y. 463 [1914].)
The weight of authority in New York is clearly in favor of holding the procedure for dismissal under the tenure statutes, the exclusive method for those teachers with tenure. (See, also, Matter of Boyd v. Collins, 11 N Y 2d 228 [1962].) The entire trend of these decisions seems to be that no teacher holding tenure should be summarily discharged without at least an opportunity for a hearing. .........
*263 This conclusion is even stronger under the present tenure statute, which contains no provisions as did section 1117 of the Greater New York Charter, that the tenure of teachers was to be “ subject to the limitations of this act.” The language is mandatory and has been so construed through the years.
Recognizing the importance of the Commissioner of Education to maintain high educational standards for the teacher, a removal subject to such regulation must still provide for a hearing. The slight inconvenience caused the Board of Education is hardly sufficient to overcome a teacher’s right to a hearing, on the outcome of which his very livelihood may depend. Nor is such a hearing necessarily a useless act, for it is not inconceivable that the board could find that a failure to conform to the regulations constitutes “ incompetency ” under the statute. Webster’s Third International Dictionary defines 1 ‘ incompetence ’ ’ as 1 ‘ lack of legal qualification or fitness ’ ’. Had there been written charges and a hearing in accordance with the statute, the teacher might have been in a better position to protect his contractual rights by having a reasonable opportunity to obtain certification or to make any explanation which might affect the discretion of the Board of Education not to act summarily in the matter without affording him an opportunity to qualify. At the time of the hearing, the factual situation may have changed so that the teacher might have obtained a certificate. Under certain circumstances, a recommendation from the Board of Education to the Commissioner might have been able to result in a renewal of the provisional certificate. On the other hand, if the circumstances would not warrant leniency, it may have been possible for the board to find that the language of the statute had been met, in that the teacher had become 11 incompetent ’ ’ since he lacked necessary legal qualifications.
The fact that the Murphy case, and others herein cited, deal with by-laws of a Board of Education, rather than regulations of the Commissioner, does not seem to this court to invalidate the reasoning.
The final question is whether a mandatory statute should be construed in such a way that it might lose its effectiveness and purpose. Something more is involved here than the licensing of a teacher. Also deserving of consideration is the contractual relation between a teacher and the Board of Education, in relation to which, the Legislature has specifically provided the sole method of terminating the contract.
The Legislature has provided a three-year period during which the Superintendent of Schools and the Board of Education *264 had the opportunity to determine the ability and competence of a teacher. The Legislature has stated in mandatory language that once this three-year period has elapsed, and a teacher receives an appointment with tenure, that there are only certain circumstances under which that teacher can be dismissed and then only by following a certain procedure. A general mandate to the Commissioner to make regulations should not result in the denial of this explicit statutory provision which has been interpreted as mandatory through the years.
The court holds that the dismissal of petitioner by the Superintendent of Schools, without benefit of a hearing as provided by law was unlawful, and that the petitioner should be reinstated to his former status as teacher of mathematics at Union Endicott High School, and his name be restored to the payrolls of Union Endicott School District, retroactive to September, 1962, at a salary schedule consistent with his length of tenure.