In the Matter of GRACE AMOS, Petitioner, v BOARD OF EDUCATION OF CHEEKTOWAGA-SLOAN UNION FREE SCHOOL DISTRICT, Respondent.

Fourth Department, November 12, 1976

*Bernard F. Ashe (Richard Heffern* of counsel), for petitioner.

*Albert J. Rydzynski* for respondent.

GOLDMAN, J. Petitioner Grace Amos commenced this article 78 proceeding seeking judgment directing the Board of Education of Cheektowaga-Sloan Union Free School District (Board) to reinstate her to her position as a tenured teacher in the respondent school district.

Petitioner began teaching in the district in 1966 and in 1970 received permanent certification from the New York State

Education Department to teach French in grades 7 to 12. Her teaching schedule in each school year from 1966 to 1971 included not only French but also at least one course in Mathematics or English or Introduction to Business. By letter dated April 7, 1971 petitioner was notified by Dr. Joseph Gizinski, respondent's Superintendent of Schools, that due to a decline in student enrollment in French courses it was necessary to abolish one French teaching position and that petitioner, as "the individual with the least tenure", would be released. By resolution of the respondent Board, petitioner's position was abolished effective June 30, 1971, and she was placed on a four-year preferred eligible list (see Education Law, § 2510, subd 3).

In the summer of 1972, petitioner learned that the respondent had hired individuals who had less seniority than she and had assigned them to teach subjects formerly taught by her. By letter dated August 11, 1972 petitioner demanded that respondent reinstate her to her position as a tenured teacher. In reply to that letter Superintendent Gizinski acknowledged that respondent had hired a Mathematics teacher and an English teacher "within the grade area of 7 to 12". He explained that petitioner had not been considered for either position because she, unlike the newly-hired teachers, lacked certification in Mathematics and English. Petitioner then commenced an article 78 proceeding which culminated in this court's decision of February 28, 1975 (*Matter of Amos v Union Free School Dist.*, 47 AD2d 711), which reversed Special Term and granted petitioner reinstatement with back pay as of September, 1971.[1]

By letter to petitioner's attorney, dated April 7, 1975, respondent's attorney stated that respondent would not appeal this court's decision. The letter continued, in part, as follows: "The Board has instructed me to be completely frank to you and Mrs. Amos. We have discussed the Education Law requirements of certification and we don't see how we can get around the requirements of Article 61 and the pertinent

---

1. The decision turned upon the conclusion that petitioner's tenure was not limited to the narrow category of French instruction, but was instead a broad "area tenure" as a secondary school academic teacher. For that reason she was not "the teacher having the least seniority in the system within the tenure of the position abolished" (Education Law, § 2510, subd 2) and respondent erred in dismissing her when the French position was abolished. Moreover, respondent's failure to rehire petitioner ahead of less senior teachers within the "secondary school academic" tenure area was held to violate her rights under subdivision 3 of section 2510 of the Education Law.

sections in that article. Therefore the Board of Education will re-instate Mrs. Amos to comply with the Court order and will pay her for any difference in wages that is due to her. Further please be advised that charges will be placed against her immediately thereafter for incompetency because of lack of certification to teach English, the position that she would have to assume under the tenure requirements. We shall follow the opinion of the Appellate Division opinion which stated 'If petitioner is unqualified for a position because of lack of certification in a particular subject, she must be removed pursuant to Education Law, sec. 3012 and 3020-a'." The plan to appoint petitioner to an English position never materialized, but in May, 1975, Superintendent Gizinski did offer her a part-time French teaching job. Her attorney rejected the offer on grounds that it would not accord petitioner the full reinstatement required by this court's decision. He stated that there were at least 10 teachers in the secondary tenure area with less seniority than petitioner. It appears also that petitioner had a full-time teaching job in Niagara Falls when the part-time offer was made.

Respondent's next offer came on June 12, 1975, when Superintendent Gizinski informed petitioner by letter that she had been appointed as a Social Studies teacher effective September 1, 1975. The letter requested petitioner to produce a New York State Education Department Secondary School Social Studies Certificate by June 27, 1975. Petitioner was not certified in Social Studies, and when she failed to produce the certificate Superintendent Gizinski immediately filed incompetency charges.

On July 1, 1975 the respondent Board found probable cause for the following charge against petitioner: "That you are unqualified and incompetent to teach Social Studies as a secondary school teacher on the grounds that you are not certified to teach Social Studies by the New York State Department of Education or the Commissioner of Education."

A hearing pursuant to section 3020-a of the Education Law was held on September 4, 1975. Superintendent Gizinski testified that the incompetency charge was based solely on petitioner's lack of a Social Studies certificate, and had nothing to do with her actual past performance, the quality of which was not questioned. Other evidence suggested that respondent never fully explored the possibility of adjusting schedules so that petitioner could be reinstated as a French teacher.

The hearing panel never resolved the issue of petitioner's alleged incompetency. The panel declared itself unable to agree on whether lack of certification in Social Studies was prima facie evidence of incompetency, and stated that the question was one for the courts or Legislature. Believing none of the penalties available under section 3020-a of the Education Law was appropriate, the panel recommended that the Board consider the following alternatives:

"A. Effect an adjustment of current staff assignments in such a manner as to allow Mrs. Amos to teach subjects in which she is currently certified.

"B. Provide Grace Amos with a paid leave of absence to complete certification in another subject and upon completion of the requirements reassign her to teach subjects in which she is certified.[2]

"C. Request the Bureau of Certification to reconsider its position on issuance of an excuse of default for Mrs. Amos in view of the Appellate Division's decision and the recommendation of this panel."[3]

Respondent rejected the hearing panel's recommendations and, by resolution adopted December 10, 1975, found petitioner "unqualified and incompetent to teach Social Studies" and dismissed her from her employment. The instant proceeding followed.

Petitioner argues that respondent acted arbitrarily and illegally in appointing her to a Social Studies position for which she was uncertified and then bringing incompetency charges against her. Respondent purported merely to be obeying this court's prior decision in this matter, where it was stated: "If petitioner is unqualified for a position because of lack of certification in a particular subject, she must be removed pursuant to sections 3012 and 3020-a of the Education Law" *(Matter of Amos v Union Free School Dist.,* 47

2. At the time of hearing, petitioner lacked only four credit hours for certification in English and there were several English teachers in the district with less seniority than she. Petitioner became certified in English on February 1, 1976.

3. Some time prior to May 30, 1975, respondent had contacted the Division of Teacher Education and Certification of the State Education Department regarding the possibility of obtaining an "excuse of default" to permit petitioner to teach Social Studies. In accord with 8 NYCRR 80.32 [a], [1], the division replied that petitioner could not be hired to teach any subject but French unless respondent could show that no certified and qualified candidate was available after extensive recruitment. Superintendent Gizinski testified that certified Social Studies teachers were available, including the teacher who was discontinued when petitioner was rehired.

AD2d 711, 712, *supra,* citing *Matter of Lynch v Nyquist,* 41 AD2d 363, affd on opn below 34 NY2d 588). *Lynch* involved a tenured teacher who taught Latin, English and Social Studies, although certified only in Latin. When Latin was eliminated from the curriculum she was dismissed and her English teaching duties were assigned to a provisionally certified English teacher of lesser seniority. The Board contended that subdivison 2 of section 2510 of the Education Law was inapplicable to a teacher who, although tenured, was not certified in the particular subject in question because continuation of the uncertified teacher's services would violate statutory proscriptions against the employment of unqualified teachers (viz., Education Law, §§ 3009, 3010). The Third Department rejected that contention, stating (41 AD2d, at p 365): "Certification requirements, however, may not be employed to erode the protections afforded tenured teachers, since the tenure statutes provide the exclusive method for dismissal for those teachers *(Matter of Kobylski v. Agone,* 37 Misc 2d 255, affd. 19 A D 2d 761). The board cannot circumvent this rule by following the procedure employed herein. The only two courses of action open to it were to discontinue the services of the teacher having the least seniority within the tenure of the position abolished, pursuant to subdivision 2 of section 2510 of the Education Law, or to discontinue petitioner's services for legal incompetence due to lack of certification by following the procedure mandated by the tenure statutes, including the granting of a hearing, pursuant to sections 3012 and 3020-a of the Education Law (see *Matter of Mannix v. Board of Educ. of City of N.Y.,* 21 N Y 2d 455; *Matter of Glass v. Board of Educ. of City of N.Y.,* 21 A D 2d 891, affd. 16 N Y 2d 982; *Matter of Feingold v. Lynch,* 31 A D 2d 969)." The foregoing language was quoted with approval by this court in *Matter of Silver v Board of Educ.* (46 AD2d 427, 432).

A further question, answered neither by *Lynch* nor *Silver* nor by this court's prior decision in the instant matter, is whether lack of certification in a subject to which a teacher is assigned is by itself conclusive on the issue of "incompetence" to teach that subject. We answer that question in the affirmative,[4] in light of the statutory duty of a Board of Education not

---

4. There would be a different question if the Commissioner of Education had exercised his discretion to "excuse the default" which respondent would commit by hiring petitioner to teach Social Studies (Education Law, § 3604, subd 6). However, the regulation which implements the commissioner's excuse-of-default power requires

to employ an unqualified teacher (see Education Law, § 3004 [authorizing Commissioner of Education to prescribe regulations governing examination and certification of teachers]; section 3009 [prohibiting the use of school funds to pay unqualified teachers]; section 3010 [making it a misdemeanor for a trustee or member of a Board of Education to allow payment of an unqualified teacher's salary from district funds]). The sections just cited must be read together with the teacher seniority provisions of section 2510 of the Education Law. We therefore conclude that petitioner's lack of certification in Social Studies was ground for excluding her from the teaching of that subject, and that respondent was not obliged to go further and demonstrate that the petitioner was *in fact* incompetent to teach Social Studies.

It does not necessarily follow, however, that a tenured teacher's statutory disability to teach a particular subject amounts to such "incompetency" as will warrant that teacher's removal under the Education Law (§ 3012, subd 2, par [b]). Petitioner contends that in order to comply with section 2510 of the Education Law "the Board had the burden of demonstrating that it was impossible to adjust schedules in such a fashion that [petitioner] would be teaching within her certification". Petitioner relies on *Matter of Steele v Board of Educ. of Valhalla Union Free School Dist.* (53 AD2d 674). There, as here, petitioner was a tenured secondary school French teacher whose French teaching position was abolished. The Board discontinued the services of the least senior teacher in the secondary tenure area, who happened to be an English teacher, and assigned the petitioner to teach English. When it appeared that she lacked certification in English, she was charged with legal incompetence on that ground, found guilty after a section 3020-a hearing, and dismissed. At the hearing the petitioner "introduced evidence tending to show that it would have been possible to retain her as a French teacher by rearranging schedules", and the respondent Board countered with evidence that such rearrangement would have posed administrative difficulties (p 674). Concluding that the petitioner was entitled to reinstatement, the court stated (pp 674-675):

a showing that no certified and qualified teachers are available "after extensive recruitment" (8 NYCRR 80.32 [a] [1]). That condition, as has been said (n 3, *supra),* is not met in this case.

"The dismissal of petitioner was violative of her rights under subdivision 2 of section 2510 of the Education Law, which provides: 'Whenever a board of education abolishes a position under this chapter, the services of the teacher having the least seniority in the system within the tenure of the position abolished shall be discontinued.' Respondent could not circumvent the mandate of that section by assigning petitioner to a position in an area of certification in which she was not likely to be certified. Administrative inconvenience does not justify an act which ignores the rights of tenured teachers as clearly spelled out by the Education Law. Although schedule shuffling may have been required in order to protect petitioner's tenure rights, petitioner demonstrated the feasibility of adjusting the schedule so that she could retain her position. * * * The problems raised by section 2510 of the Education Law in terms of class scheduling and related administrative problems are for the Legislature, and not for this court, to consider and resolve."

The *Steele* court reconciled its result with *Matter of Lynch v Nyquist* (41 AD2d 363, affd on opn below 34 NY2d 588, *supra)* on grounds that the teacher there was dismissed after the only subject in which she was certified, namely Latin, was dropped from the curriculum altogether. Thus it was plainly impossible in *Lynch* to assign the teacher within her certification.

*Steele* did not expressly decide which party bears the burden of proof on the question of feasibility of schedule adjustment. However, the Board of Education would seem to be in the better position to bear that burden, having readier access to information on schedules, budgets, teacher seniority and certification status, present and projected curriculum needs, the feasibility of obtaining an excuse of default (see ns 3 and 4, *supra)* and other pertinent factors. The Board, therefore, should bear the burden of proving that it is impossible to adjust schedules to permit a tenured teacher to teach within certification. The Board failed to meet its burden.

Having determined that the Board did not meet its burden of proving the impossibility of accommodating petitioner through schedule adjustments, the appropriate remedy is reinstatement of petitioner with back pay and associated rights and benefits as of December 10, 1975, which was the date of respondent's resolution finding her guilty of "incompe-

tency" and dismissing her.[5] Respondent would be entitled to offset any earnings which petitioner had during this period in computing her back pay *(Matter of Lezette v Board of Educ., Hudson City School Dist.,* 35 NY2d 272, 283).

Petitioner raises questions whether the hearing procedure violated due process. She urges that the Commissioner of Education acted in excess of his delegated authority by adopting regulations to cure constitutional defects in section 3020-a of the Education Law. The same *ultra vires* argument was rejected by this court in *Matter of Jerry v Board of Educ.* (50 AD2d 149, 160-161). With commendable candor, petitioner also acknowledges the following decisions rejecting the argument: *Matter of Bott v Board of Educ.* (51 AD2d 82); *Matter of Clayton v Board of Educ.* (49 AD2d 343); *Matter of Polskin v Board of Educ.* (49 AD2d 968); *Hodgkins v Central School Dist. No. 1* (48 AD2d 302). We find no compelling reason to depart from our position in *Jerry.*

Petitioner also contends that the procedure followed in dismissing her worked a denial of due process because "The Board and/or its agents acted as prosecutor, judge and jury". She notes that the charges were filed by Superintendent Gizinski, an agent of the Board, that the Board itself found probable cause, that the Board's attorney prosecuted the charges, and that the Board ultimately reversed the panel's favorable recommendation. In *Matter of Jerry v Board of Educ.* (50 AD2d 149, 161, *supra),* we considered and rejected the contention that "section 3020-a violates due process because it requires the Board of Education to combine the investigative and decision-making functions", noting the absence of a showing of actual, rather than potential, bias. For like reasons we find no merit in petitioner's due process argument. (Cf. *Hortonville Joint School Dist. No. 1 v Hortonville Educ. Assn.,* 426 US 482.)

Determination of respondent Board should be annulled, with costs, and matter remitted to respondent in accordance with opinion.

SIMONS, J. (concurring). I concur in the decision to annul the Board of Education's decision and order reinstatement of petitioner, but I would do so on different grounds. In my

---

5. By this court's prior decision in this matter, respondent was directed to reinstate petitioner as of September, 1971, with back pay and associated rights and benefits (47 AD2d, at p 712). Although the record is not entirely clear, it appears that she was reinstated on May 1, 1975, and paid through December 10, 1975.

judgment, the Board's decision to remove petitioner because she was not certified to teach English was an excessive penalty in view of her excellent past record as a teacher and the fact that she lacked only four credit hours to achieve certification at the time (CPLR 7803, subd 3). I would grant the petitioner relief by modifying the penalty imposed to one of suspension without pay until February 1, 1976, the date on which she became certified in English (see Education Law, § 3020-a, subd 4). Inasmuch as there are English teachers with less seniority in petitioner's tenure area, she now will be able to return to work.

It seems to me that this result not only respects petitioner's tenure rights but also the Board's responsibility to reorganize its schools in the interest of efficiency and economy (see *Matter of Young v Board of Educ.,* 35 NY2d 31; *Board of Educ. v Niagara Wheatfield Teachers Assn.,* 54 AD2d 281) and the pupils' right to receive instruction from competent teachers (see Education Law, §§ 3009, 3010). On the facts of this case, the solution proposed in the majority opinion unnecessarily may require the Board to divide the limited French courses offered between two teachers and then require that the teachers supplement the assignments in their field of certification by teaching courses in which they are not certified and by monitoring study halls. The result recognizes petitioner's interests but it ignores the interests of the Board, the pupils and the public generally.

MARSH, P. J., MOULE and CARDAMONE, JJ., concur with GOLDMAN, J.; SIMONS, J., concurs in an opinion.

Determination annulled with costs, petition granted and matter remitted to the respondent Board of Education in accordance with opinion by GOLDMAN, J.