In the Matter of JOHN ROOT, Petitioner, v BOARD OF EDUCATION OF THE FULTON CONSOLIDATED SCHOOL DISTRICT et al., Respondents.

Fourth Department, November 14, 1977

*Bernard F. Ashe (Ira Paul Rubtchinsky* of counsel), for petitioner.

*Hancock, Estabrook, Ryan, Shove & Hust (William Allen* of counsel), for respondents.

DENMAN, J. This is an article 78 proceeding, transferred to this court pursuant to CPLR 7804 (subd [g]) by order of Supreme Court, Oswego County, in which petitioner seeks to set aside an action of the respondent Board of Education terminating his employment.

Throughout the 1973-1974 school year petitioner, a high school English teacher, was cautioned by the department chairman, Mrs. Riess, on deficiencies in his teaching methods, preparation, lesson plans, use of inappropriate materials, grading techniques and other aspects of his teaching performance. There was a substantial amount of communication on these subjects, both verbal and written, and several conferences were held, some of which included the principal, Mr. Rowland. The thrust of these efforts was to urge petitioner to raise his teaching performance to a satisfactory level, to adopt certain policies and standards relating to curriculum, to prepare adequate and purposeful lesson plans, and generally to co-operate with the administration and Mrs. Riess in seeking to improve the quality of education in his classes. Some improvement was noted for a time but apparently it was short-lived.

In March petitioner used the school copying machine to reproduce a number of copies of a coded list of crude epithets. He distributed the list to some faculty members and, inevitably, one fell into the hands of a student, resulting in parental ire. This event apparently triggered the laying of five charges against petitioner, who was suspended pending the outcome of a hearing which was held pursuant to section 3020-a of the Education Law.

Over 1,800 pages of testimony and almost 900 pages of exhibits were entered on the record during the course of the hearing. Based on the evidence before it, the hearing panel recommended to the respondent board that Charges 4 and 5 be dismissed, but found that the evidence sustained the first three charges. On the basis of the hearing panel's findings, the board discharged petitioner on the grounds that he was (1) guilty of incompetency for failure to comply with the standards and policies outlined by Mrs. Riess and Mr. Rowland and (2) guilty of misconduct for the improper reproduction and distribution of offensive material in the school. The third

charge, although sustained, was a technical infraction and was treated accordingly.

Petitioner argues that the only charges which will support the termination of a tenured teacher are those enumerated in subdivision 2 of section 3012 and subdivision 2 of section 3013 of the Education Law. That argument was rejected by the Court of Appeals in *Matter of Clayton v Board of Educ.* (41 NY2d 966). In any event, the grounds on which petitioner was removed, i.e., incompetence and misconduct, are clearly enumerated in those sections. The fact that these terms did not literally appear in the initial charges is of no moment. It is the adequacy of the grounds for the board's decision which is under review.

Petitioner's contention that the charges against him were unconstitutionally vague and did not apprise him of the conduct complained of is unfounded. Despite the fact that the initial charges were somewhat inartfully drawn, they were followed by a 13-page letter detailing very specifically the behavior which formed the basis for the charges and petitioner was supplied with a 67-page bill of particulars amplifying the first three charges. Even prior to the institution of the charges, petitioner's department chairman and principal had notified him of the specific problems with his teaching, and had consulted with him and advised him that he would be expected to correct his teaching deficiencies. He therefore cannot be heard to say that he was not adequately informed of the criticisms being leveled at his teaching performance.

We are urged to annul the board's determination because the charges were not substantiated. Petitioner's hearing was extensive, resulting in a record consisting of six volumes. The record is replete with evidence of petitioner's incompetency, inefficiency, and refusal to co-operate with the suggestions and policies of the chairman of the English Department and the principal. Observation of petitioner's classroom performance indicated that he did very little active teaching. His classes did a great deal of silent reading and he showed a great many movies and film clips without accompanying teaching activities. He did very little work with composition and some compositions were graded inadequately and improperly. Spelling lists were found by the department chairman in which many of the words were misspelled. Indeed, petitioner's letters in the record reveal a shocking deficiency in spelling and language skills.

The department chairman had to urge petitioner to submit lesson plans and when he did so, she stated that they were consistently inferior. Although the New York State syllabus requires the writing of book reports, petitioner said that he did not agree with that policy and did not require reports from his students. He was aware of the existence of an English curriculum which had been prepared for use by all teachers in the department, but he admitted that he did not use it and was waiting to be told to use it. He admitted that he had been urged to send student progress reports to parents of students who were in danger of failing; however, despite the fact that in three years petitioner recorded 116 failing grades, he sent only 28 progress reports during that time. A comparison of petitioner's grade book with the school's permanent record indicated that he raised grades on report cards, making them inconsistent with the permanent record. Petitioner's poor teaching performance resulted in a series of conferences in which petitioner, the department chairman and the principal participated. The department chairman attempted to aid him and give him advice on how to improve his teaching and suggested means by which he could teach more effectively. Such admonitions apparently fell on deaf ears.

With respect to the charge of misconduct, petitioner admitted copying and distributing the list of epithets to a few members of the faculty. We do not need to decide, as petitioner urges us to do, whether the offending material was "obscene" as that term is used in the Penal Law. No criminal sanctions are being imposed or threatened. "[D]isciplinary charges against teachers are not criminal proceedings. Indeed, their primary function is not punitive, but rather the determination of the fitness of the teachers against whom they may be brought to continue to carry on their professional responsibilities. [Citations omitted]." *(Matter of Bott v Board of Educ.,* 41 NY2d 265, 268.) Petitioner admits the conduct and it was within the competence and authority of the board to decide whether such conduct was improper under the circumstances.

We find substantial evidence on this record to sustain the board's determination with respect to both charges. *(Matter of Pell v Board of Educ.,* 34 NY2d 222.)

We are further asked to nullify petitioner's dismissal because its severity was disproportionate to the above-mentioned conduct. The penalties imposed by a public agency with responsibility for discipline must be accorded great weight and

judicial review in these instances is limited to determining whether or not there has been an abuse of discretion *(Matter of Ahsaf v Nyquist,* 37 NY2d 182; *Matter of Pell v Board of Educ., supra).* In examining a penalty imposed by an administrative agency charged with such responsibility, the court may set such determination aside "only if the measure of punishment or discipline imposed is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness." *(Matter of Pell v Board of Educ., supra,* p 233.) Under such standards, the dismissal of petitioner here, on a record replete with evidence of inefficiency, lack of interest, and lack of co-operation in matters bearing on his ability to teach the students entrusted to him, we cannot say that dismissal was so unfair and unjust as to be shocking to one's sense of fairness.

Petitioner's attack on the hearing procedures on constitutional grounds has been answered by this court *(Matter of Amos v Board of Educ.;* 54 AD2d 297; *Matter of Jerry v Board of Educ.,* 50 AD2d 149, app dsmd 39 NY2d 1057) and his claim of possible bias must fail as there must be a showing of actual bias to overturn the board's decision. *(Matter of Amos, supra; Matter of Jerry, supra.)*

The petition should be dismissed and the determination of respondents confirmed.

MARSH, P. J., MOULE and WITMER, JJ., concur; GOLDMAN, J., not participating.

Determination unanimously confirmed and petition dismissed, without costs.